**REPUBLIC OF PANAMA, Plaintiff,**

v.

**CITIZENS AND SOUTHERN INTERNATIONAL BANK, Republic National Bank of Miami, Barnett Bank of South Florida, N.A., and Bank of New England International, Defendants.**

No. 88–410–Civ.

United States District Court
S.D. Florida.

March 22, 1988.

Mark A. Cohen, Miami, Fla., Melvin C. Garbow, Washington, D.C., for plaintiff.

Robert Sondak, Miami, Fla., for Republic Bank.

Peter Homer, Miami, Fla., for Barnett and Bank of N.E.

Vincent Damian, Jr., Miami, Fla., for C & S Int'l.

Barry I. Slotnick, New York City, for Banco National de Panama.

Terry Gross, New York City, for Air Panama.

## ORDER DENYING MOTIONS TO INTERVENE

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the Banco Nacional de Panama's ("BNP") motion to intervene, and upon the *ore tenus* motion to intervene made on behalf of the government of Manuel Solie Palma ("Palma") and General Manuel Noriega ("Noriega").

THE COURT has considered the motions and the pertinent portions of the record, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED as follows:

The background and procedural posture of this case are set forth in the Court's Order Entering Preliminary Injunction entered under even date herewith.[1] In this Order the Court REAFFIRMS its *ore tenus* ruling on March 16, 1988, which DENIED both BNP's and Palma's motions to intervene.

### Political Question Doctrine

■ The Court's preliminary injunction Order effectively decides the central issues presented in these motions to intervene. The Executive branch's exclusive power to recognize and legitimize a foreign government is binding upon the courts and pre-

cludes a suit in United States courts by an unrecognized government. *See Pfizer Inc. v. India*, 434 U.S. 308, 319–20, 98 S.Ct. 584, 591, 54 L.Ed.2d 563 (1978); *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410, 84 S.Ct. 923, 930, 11 L.Ed.2d 804 (1964); and *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938).

This doctrine completely precludes the Palma government's intervention and participation in this litigation. In *Federal Republic of Germany v. Elicofon*, 358 F.Supp. 747 (E.D.N.Y.1970), *aff'd sub nom.*, 478 F.2d 231 (2d Cir.1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974), the court rejected the intervention of an art museum performing a governmental function as an arm of the unrecognized government of Germany.

Given the Acting Secretary of State's March 2, 1988 certification that the United States recognizes Ambassador Juan B. Sosa as the legitimate representative of the Republic of Panama, the Palma government's motion to intervene be and the same is hereby DENIED. Under the political question doctrine, no other disposition is possible.

### BNP

As the New York court stated, BNP's motion to intervene is "somewhat more tenable." *Republic of Panama v. Republic National Bank of New York, et al.*, 88 Civ. 1427 (LFM) [Available on WESTLAW, 1988 WL 22084]. BNP sets forth two central arguments in an attempt to intervene. First, that it is not a central bank within the meaning of 12 U.S.C. sec. 632, and second, that most of the funds it holds are private funds. As a preliminary matter, the Court notes that in addressing BNP's motion to intervene, the Court is not guided by the ordinary principles governing intervention pursuant to Fed.R.Civ.P. 24(a). If

1. The Court held a hearing on BNP's motion to intervene simultaneously with the hearing on the plaintiff's motion for a preliminary injunction on March 16, 1988. At this hearing, the Court considered the arguments of counsel for BNP and all other parties on BNP's motion to intervene. BNP also made an evidentiary proffer of the facts which it sought to prove through testimony. This proffer and the arguments of counsel appear in the record of that hearing.

BNP were a private domestic depositor, there is little doubt that it would be entitled to intervene and assert its claim to funds held in its name in a United States bank.

The basis for denying intervention is instead the *Elicofon* rationale that an agent of an unrecognized government is not permitted access to United States courts. BNP argues, of course, that *Elicofon,* and section 632 are inapposite. Section 632 itself does not directly speak to the issue of whether an unrecognized government is procedurally permitted to intervene in litigation. What section 632 does do is to exonerate a bank from any liability associated with following the directions of a duly recognized representative of a foreign state with regard to funds held on the state's behalf.

■ Yet section 632's extraordinary exoneration from liability does seem to lead to the concomitant principle that only the duly recognized representative has authority or standing to contest funds held on behalf of a foreign state. From this perspective, section 632 is completely consistent with *Elicofon* and the political question doctrine. Indeed, section 632 is little more than a codification of the doctrine in the context of banking.

#### a. Central Bank

■ Section 632 states, in somewhat circular fashion, that a central bank "includes any foreign bank or banker authorized to perform any one or more of the functions of a central bank." BNP argues that it is not a central bank under section 632 because as Panama's currency is the United States dollar, the bank does not play the critical role of a genuine central bank in regulating the money supply and printing currency. Furthermore, BNP states that it does not regulate other Panamanian banks by setting reserve and margin requirements, typical central bank functions. Finally, BNP notes that the International Monetary Fund considers it a commercial bank.

But section 632's definition of a central bank is helpful to the extent that it requires only the performance of "one or more" of typical central bank functions. To this extent, BNP's emphasis on the alleged distinctions between it and a genuine central bank are unpersuasive. The true inquiry must be on the similarities, not the distinctions, between BNP and a typical central bank. Indeed, one possible construction of section 632 is that BNP will be treated as a central bank so long as it performs even a single function of a true central bank. But the Court need not rely upon such a thin thread, for BNP has many indicia of a central bank.

One central feature of a section 632 central bank is its status as the fiscal agency of a foreign government. *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467, 474 (9th Cir.1953). In Panamanian legislation reorganizing BNP, the bank is established as the "primary financial organization of the State." To this end, all government funds must be deposited in BNP. Furthermore, the government is responsible for all of BNP's financial obligations. BNP is wholly owned by the government, and the government appoints all of BNP's directors and the executive branch may remove BNP's General Manager.

#### b. Private Funds

■ These factors amply suffice to establish BNP as a central bank under section 632. BNP next argues that even if it is a central bank or agency of the state, it must be allowed to intervene to represent the interests of its private depositors whose funds constitute 55 percent of its deposits. BNP argues "that what plaintiff attempts in this action is, in effect, to seize not public funds but the funds of private Panamanian citizens and entities." In short, BNP asserts that it must be allowed to intervene to insure that the plaintiff does not confiscate private funds.

BNP relies principally upon the decision in *Republic of Iraq v. First National City*

*Bank,* 353 F.2d 47 (2d Cir.1965), where the court refused to enforce a decree by the lawfully *recognized* government of Iraq which sought the confiscation of private funds held in New York of the former Iraqi king, King Faisal II. The *Republic* court held that it would violate public policy to give effect to an Iraqi ordinance purporting to confiscate the King's personal bank account and stock in New York. *Id.* at 49.

BNP describes the *Republic* decision as standing for the proposition that "foreign governmental takings of foreign nationals' assets in the United States [are] 'contrary to our public policy and shocking to our sense of justice.'" Indeed, it *is* incumbent upon a court to determine whether a foreign government's act purporting to have extraterritorial effect in the United States is consistent with our public policy and to deny such effect when it is not. *Allied Bank Intern. v. Banco Credito Agricola,* 757 F.2d 516, 522 (2d Cir.1985).

BNP does recognize that unlike the situation presented in *Republic* and *Allied Bank,* there has been no confiscatory decree by the Panamanian government. But BNP asserts that the plaintiff seeks to achieve this alleged confiscation by the Court's entry of a "confiscatory order." But even placing this significant distinction to the side, BNP has obfuscated the critical issue under *Republic.* That case presented a situation where a foreign state sought to control funds held in an *individual's* own name. By contrast, the funds at issue presently are held in *BNP's* name, not in the names of its distinct individual depositors.

While BNP as an entity certainly owes certain fiduciary duties to those private individuals and entities which have deposited funds in the bank, this does not change the fact that the defendants are holding funds "from or for the account of a central central bank" under section 632. Indeed, if this were not the case then section 632 would be inapplicable, which it is not. The defendants are not holding funds in BNP's name "from or for the account" of each of BNP's private depositors.

This reasoning makes clear that the Court in no way enters a confiscatory order of private assets by enjoining BNP from withdrawing funds in order to pay them over to its private depositors. The funds in these defendants' banks belong to BNP as a legal entity, and this brings forward the political question doctrine and section 632.[2]

This is not to suggest that a court is precluded from looking behind record title in this context. Indeed, where a complaint contains substantial allegations that a private individual's title to property located in the United States was obtained illegally, a court is not per se precluded from recognizing a foreign decree which would otherwise be precluded as the confiscation of private property. *Republic of Philippines v. Marcos,* 806 F.2d 344, 360 (2nd Cir.1986). But there is no allegation in this case that BNP illegally obtained the funds on deposit in Miami.

### Conclusion

In short, the Court concludes that under the political question doctrine and section 632, it is inappropriate to allow BNP to intervene in this action because it is the central bank of Panama and the plaintiff is the only lawfully recognized representative of the Panamanian people allowed access to our courts. The Court also rejects BNP's argument that it is entering a confiscatory order which improperly allows for the seizure by a foreign government of private funds in the United States. The funds on deposit in the defendant banks are not private funds, even though BNP may owe fiduciary obligations to its private depositors. Thereupon, BNP's motion to intervene be, and the same is, hereby DENIED.

---

**2.** It should be observed that, in any event, neither this order or the Court's Order Entering Preliminary Injunction determines ultimate legal title to the funds held in the defendant banks. The Court merely seeks to maintain the status quo pending a final judgment in this matter.

## ORDER ENTERING
## PRELIMINARY INJUNCTION

THIS CAUSE came before the Court upon the plaintiff's, Republic of Panama, complaint for a preliminary injunction enjoining the defendants, Citizens and Southern International Bank, Republic National Bank of Miami, Barnett Bank of South Florida, N.A., and Bank of New England International, from transferring any funds or other property held in the name of the Republic of Panama or any of its agencies or instrumentalities.

THE COURT has considered the application for a preliminary injunction, heard oral argument, reviewed documentary evidence and the pertinent portions of the record. At a hearing held on March 16, 1988, the Court invited all counsel of record, proposed intervenors, and any other interested party, to adduce testimony and any other evidence. Except for proposed intervenor Banco Nacional de Panama ("BNP"), no party sought to introduce any additional evidence. The Court declined BNP's invitation to present evidence as a result of its *ore tenus* ruling which denied its motion to intervene.

Therefore, this ruling contains conclusions of law predicated upon the papers and exhibits filed with the complaint and introduced at the March 9, 1988 hearing on the plaintiff's application for a temporary restraining order, as well as the proffers and arguments of counsel. Being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED as follows:

### Background

This litigation arises out of a dispute over which government is entitled to control funds held in United States banks in the name of the Republic of Panama, its agencies and instrumentalities. On February 25, 1988, President Eric Arturo Delvalle ("Delvalle") dismissed General Manuel Noriega ("Noriega") as Commander of the Panamanian Defense Forces. Noriega, however, did not recognize Delvalle's order dismissing him, and on February 26, 1988 the National Assembly of Panama purported to remove Delvalle from office. Subsequently, Panama's Cabinet Council named Manuel Solie Palma ("Palma") as the President of Panama.

The defendants to this action are four United States banks which hold funds in the name of the Republic of Panama or one of 19 entities identified by the plaintiff as being agencies or instrumentalities of the government. The plaintiff is the Republic itself, as constituted by the Delvalle government and as recognized by the United States. The Banco Nacional de Panama ("BNP") has sought to intervene in this action. On March 16, 1988, counsel appeared at the hearing held herein and sought to intervene on behalf of the Noriega regime and all of the other entities identified by plaintiff as having bank accounts in the United States. The Court rejects these motions to intervene under separate Order entered under even date herewith.

On March 8, 1987 the Court entered an *ex parte* temporary restraining Order precluding the defendants, their affiliates and agents, from making any debit against any accounts held in the name of the Republic of Panama, its agencies or instrumentalities. The Court held a hearing on the plaintiff's request for a temporary restraining order on March 9, 1988, and therein affirmed in all respects the Order entered the previous day. The Court continued the temporary restraining Order and set a hearing on the plaintiff's application for a preliminary injunction for March 16, 1988.

At the March 16, 1988 hearing, the Court ruled *ore tenus* that the defendants are PRELIMINARILY ENJOINED under the terms detailed in the previously entered temporary restraining order, from transferring any funds held in the name of the Republic of Panama or any of its instrumentalities and agencies, or in allowing any debit to be made against these funds, except as otherwise permitted herein. This memorandum opinion REAFFIRMS that

ruling, but also supplements it and addresses certain issues not previously ruled upon. This preliminary injunction is not a final adjudication on the merits, and does not vest title in the subject funds in the plaintiff.

### Proposed Settlements

The Court will address the merits of the preliminary injunction application even though the parties have filed various stipulations and proposed consent orders. Defendant Citizens and Southern International Bank ("Citizens and Southern") has consented to the entry of a 60 day preliminary injunction precluding it from making any debits against subject funds so long as the Certificate of Acting Secretary of State of the United States dated March 2, 1988 remains valid and in effect. The plaintiff, however, has agreed that Citizens and Southern may make payments under certain outstanding letters of credit, acceptances and obligations.

Defendant Republic National Bank of Miami ("Republic") has also agreed to entry of a 60 day preliminary injunction so long as the March 2, 1988 Certificate remains in effect. The other two defendant banks, Barnett Bank of South Florida, N.A. ("Barnett"), and Bank of New England International ("New England"), have not agreed to the entry of a preliminary injunction. These two defendants, however, have represented in open court that the only funds they hold subject to the Court's temporary restraining Order are those of Air Panama International.

The Court cannot merely affirm and adopt the settlements reached by the parties because they propose to move beyond maintenance of the status quo, to a final adjudication on the merits of the plaintiff's claims. Citizens and Southern and Republic both propose that no transfers of funds be allowed except upon the consent of the plaintiff's Ambassador, Juan B. Sosa.

While the Court concludes below that the plaintiff enjoys a substantial likelihood of success on the merits, the procedural posture does not yet require or authorize the Court to adjudicate the plaintiff's ultimate claim to title to the bank accounts held in the Republic of Panama's name. Nonetheless, the Court is impressed by these parties' consent to a preliminary injunction and this fact will be appropriately considered in addressing the merits of preliminary injunctive relief.

### Air Panama International

Before reaching the preliminary injunction, the Court must address certain matters pertaining to Air Panama International. The plaintiff has instituted separate litigation against Air Panama. *See Republic of Panama v. Air Panama,* Case No. 88–485–Civ–HOEVELER (S.D.Fla.). Counsel for Barnett and New England have stated that these defendants would consent to the jurisdiction of the Honorable William Hoeveler regarding funds held on Air Panama's behalf, if the Court would dismiss them as defendants in this action. Counsel stated that these banks will consent to any rulings of Judge Hoeveler regarding funds held on Air Panama's account, even though Barnett and New England are not named, and do not wish to be named, as defendants in that action.

Plaintiff has informed the Court that Republic also has funds held on Air Panama's account. Plaintiff requested the Court to relinquish jurisdiction over these funds, and to assign jurisdiction to the matter to Judge Hoeveler. The Court agrees that it is imminently reasonable for all matters pertaining to Air Panama to be heard and adjudicated in Case 88–485–Civ–HOEVELER. Judge Hoeveler has ordered that a new Board of Directors of Air Panama be appointed pursuant to the Delvalle government's request.

Thereupon, Republic, Barnett and New England are DIRECTED to move before Judge Hoeveler for him to accept jurisdiction over funds held by these banks on Air Panama's behalf. If Judge Hoeveler accepts jurisdiction, then upon filing proof of

the same, the Court will thereafter dismiss defendants Barnett and New England. Upon Judge Hoeveler's acceptance of jurisdiction over Air Panama funds held in the defendant banks, the Court's injunction entered against transfers from Air Panama's accounts in the defendant banks will automatically DISSOLVE and be VOID. Until further order of the Court or Judge Hoeveler, however, the defendants are enjoined from transferring any Air Panama funds.

### Preliminary Injunction

■ The Court considers the plaintiff's prayer for a preliminary injunction under the familiar rubric established in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974).

> The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Id.* at 572. *See also Johnson v. United States Department of Agriculture*, 734 F.2d 774, 781 (11th Cir.1984).

The Court is aware that another court has recently ruled favorably upon a related application for preliminary injunction in *Republic of Panama v. Republic National Bank of New York, et al.*, 88 Civ. 1427 (LFM). The standard for a preliminary injunction, however, is somewhat different in the Second Circuit. *See Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir.1986). Under *Williams*, the *Republic National* court was only obligated to consider the first two of *Canal Authority's* four prerequisites: likelihood of success and irreparable harm. Despite this distinction, the *Republic National* court's decision is of substantial assistance in addressing the issues pending before the Court.

#### a. Likelihood of Success

The plaintiff's likelihood of success on the merits is determined by two separate

but related bodies of law: the political question doctrine and 12 U.S.C. sec. 632 of the Edge Act. Under the political question doctrine, the judiciary gives complete deference to the executive's recognition of a foreign state. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410, 84 S.Ct. 923, 930, 11 L.Ed.2d 804 (1964) ("Political recognition is exclusively a function of the Executive."). The judiciary then enforces this unique executive function by establishing that "only governments recognized by the United States and at peace with us are entitled to access to our courts." *Pfizer, Inc. v. Government of India*, 434 U.S. 308, 319–20, 98 S.Ct. 584, 591, 54 L.Ed.2d 563 (1978).

■ Given "this established rule of complete judicial deference to the Executive Branch," the Court's function is uniquely simplified to determining whether the executive department has recognized a particular government. *Id.* Where competing governments vie for a foreign state's property located in the United States, the executive branch's official recognition of one government conclusively establishes title.

In *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 104 F.Supp. 59 (N.D. Cal.1952), *modified*, 209 F.2d 467 (9th Cir. 1953), the court addressed a situation where the Nationalist Government of China and the Peoples Republic of China both claimed title to a bank account held in the name of "Bank of China." But the *Bank of China* court held that the executive department's recognition of the Nationalist government was only "a fact which properly should be considered and weighed along with the other facts before the court." 104 F.Supp. at 64. In fact, the court went on to state that if there was "only one government in a position to act effectively for the State ... the Court might be justified in accepting such a government as the proper representative of the State, even though our executive declined to deal with it." *Id.* at 66.

The Court, however, concludes that no such independent judicial evaluation is ap-

propriate under *Sabbatino* and *Pfizer*. On March 2, 1988, the Acting United States Secretary of State certified pursuant to 12 U.S.C. sec. 632 that Ambassador Juan B. Sosa "is recognized by me as being the accredited representative of the Republic of Panama to the Government of the United States...." Given this official pronouncement, no further judicial inquiry is needed.

The March 2, 1988 certification was made pursuant to 12 U.S.C. sec. 632, which in part constitutes a legislative codification of the political question doctrine. Section 632 applies where an insured bank holds funds in the name of a foreign state or foreign central bank. Upon the Secretary of State's diplomatic recognition of a person as the accredited representative of that state, any transfer upon that person's order means that "such person shall be conclusively presumed to be lawful and shall constitute a complete discharge and release of any liability of such bank or with respect to such property."

As section 632 establishes a "conclusive" presumption that official recognition establishes title to funds held for the account of a foreign state or a foreign central bank, the only judicial task, once recognition is established, is to determine whether particular funds are held on the account of a foreign state or central bank. The plaintiff has filed a list of 19 entities which are allegedly agents or instrumentalities of Panama, including BNP and Air Panama International.

As stated above, the Court will relinquish jurisdiction over accounts held in Air Panama's name if Judge Hoeveler accepts jurisdiction over same. BNP is the subject of a motion to intervene brought by BNP and addressed under separate order entered herewith. As for the other identified entities, there is no dispute that they are agents or instrumentalities of the Republic of Panama. Terry Gross of the law firm of Rabinowitz Boudin Standard Krinsky & Lieberman, P.C., entered an appearance at the hearing on March 16, 1988 and sought to intervene in the action on behalf on the Noriega government and each of the other identified entities. The Court ruled *ore tenus* that this motion to intervene was denied, under the same political question doctrine at issue in this application for preliminary injunction.

### b. Irreparable Harm

Under section 632 and the political question doctrine the Court is certain that the plaintiff enjoys a substantial likelihood of success on the merits. The Court then turns to the question of whether there is a substantial threat that the plaintiff will suffer irreparable injury. The *Republic National* court concluded on this point that "the harm imminent here goes beyond mere monetary loss to the very survival of the lawful Delvalle government." The court relied upon the reasoning that section 632 was designed "as a practical matter to avoid time-consuming litigation and to give [an] exiled government effective control over [its] funds." *See* ALI, *Restatement (Second) of the Law, Foreign Relations of the United States*, sec. 111, Reporters' Notes at 350 (1965).

The question presented is whether the plaintiff would be irreparably harmed by the loss of its claim to specifically identified funds held in the state's name; funds from which the Court can promptly adjudicate title to in a final order. Section 632 constitutes a congressional statement that a government lawfully given official recognition would suffer irreparable harm by such loss. Given this explicit congressional pronouncement that a speculative legal claim against the bank is inadequate, the Court, in accordance with the political question doctrine, holds that there is a substantial threat of irreparable harm to the plaintiff.

### c. Balance of Hardships

Under *Canal Authority*, the Court is instructed to determine whether the threat-

ened harm to the plaintiff outweighs that threatened to the defendants. The defendants have not asserted that they would be irreparably harmed by the entry of a preliminary injunction. Quite to the contrary, both Republic and Citizens and Southern have affirmatively consented to the entry of an injunction. The other two defendants hold funds only in Air Panama's name, and these funds are subject to this preliminary injunction only until Judge Hoeveler accepts jurisdiction over them. Given the defendants' acquiescence in the entry of an injunction, and their failure to allege or produce any evidence of injury accruing therefrom, the Court holds that the injury threatened to the plaintiff outweighs that threatened to the defendants.

### d. Public Interest

Finally, the Court considers the last *Canal Authority* prerequisite; whether the granting of a preliminary injunction will serve the public interest. The Court must once again take its que from section 632 and the political question doctrine. Section 632 establishes a legislative statement that the public interest is served by the quick adjudication and disposition of disputed funds held in the name of a foreign state. The Court can give effect to this policy only by entering a preliminary injunction in plaintiff's favor. Consequently, the Court finds that the last prerequisite is satisfied.

### Conclusion

In sum, the Court REAFFIRMS its *ore tenus* entry of a preliminary injunction on March 16, 1988, against transfers by the defendants of funds held on behalf of the Republic of Panama, its agencies or instrumentalities. The Court ENTERS hereby a preliminary injunction against the defendants from making any debit, including without limitation, any payment of any checks, drafts, notes, financial obligations, and other forms of indebtedness, against any account of the Republic of Panama, as well as any agency or instrumentality thereof.[1]

The Court, however, ACCEPTS the stipulation entered into between Citizens and Southern and the plaintiff to the extent it allows the bank to honor financial commitments already entered into in the form of letters of credit, acceptances and obligations identified as exhibit "B" to the parties' agreement. Finally, the Court DIRECTS Republic, Barnett and New England to move within 3 days before Judge Hoeveler for his acceptance of jurisdiction over Air Panama funds.

---

1. The Court finds that no bond is necessary in light of section 632.