**REPUBLIC OF PANAMA, Plaintiff,**

v.

**AIR PANAMA INTERNACIONAL, S.A.,
Carlos Pere, Fred Durling, and Oderay
Botello, Defendants.**

**No. 88–435–Civ.**

United States District Court,
S.D. Florida.

June 14, 1988.

Mark A. Cohen, Richard A. Lehrman, Cohen & Silver, P.A., Miami, Fla., Melvin C. Garbow, Daniel A. Rezneck, Rebecca E. Swenson, Arnold & Porter, Washington, D.C., for plaintiff.

Ira Kurzban, Kurzban, Kurzban & Weinger, Miami, Fla., Terry Gross, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for defendants.

## ORDER ENTERING PRELIMINARY INJUNCTION AND OMNIBUS RULING ON PENDING MOTIONS

HOEVELER, District Judge.

THIS CAUSE is before the Court upon the Complaint of plaintiff, the Republic of Panama, for a preliminary injunction enjoining the defendants from making any payments to, or transferring to the control of, the Noriega/Palma regime any funds or other property of defendant Air Panama Internacional, S.A. ("Air Panama"), and from interfering with the exercise of control of Air Panama by any person authorized by His Excellency Juan B. Sosa.

THE COURT has considered the application for a preliminary injunction, heard oral argument, and reviewed documentary evidence and the relevant parts of the record. Being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED as follows:

## I.

## BACKGROUND

This is an action to establish the rights of plaintiff, the Republic of Panama, to the funds, aircraft and other property owned by the plaintiff but at the outset of this litigation controlled by persons appointed by the Noriega/Palma regime in Panama. The action arises out of the current political struggle in the Republic of Panama. On February 25, 1988, the President of Panama, Eric Arturo Delvalle ("Delvalle") dismissed General Manuel Antonio Noriega ("Noriega") as Commander of the Panamanian Defense Forces. General Noriega refused to accept the decision of President Delvalle and, on February 26, 1988, caused the National Assembly of Panama to take actions purportedly removing President Delvalle from office and causing Panama's Cabinet Council to name Manuel Solis Palma ("Palma") as the new President of Panama. In an Executive Order of April 8, 1988, of which the Court takes judicial notice, President Reagan responded to these actions by declaring "that the policies and actions in Panama of Manuel Antonio Noriega and Manuel Solis Palma constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." Executive Order Prohibiting Certain Transactions With Respect to Panama at 1 (April 8, 1988). President Reagan "declare[d] a national emergency to deal with that threat." *Id.*

The United States has recognized the Delvalle government as the lawful govern-

ment of the Republic of Panama and has recognized Ambassador Juan B. Sosa "as the accredited representative of the Government of Panama in the United States with authority to speak for, and represent the interests of, the government of Panama in" this country. (Attachment E to Sosa Declaration).[1]

The defendants in this action are Air Panama and three employees of Air Panama. Air Panama is a corporation formed to provide international airline service to and from Panama. The government of Panama owns 100 percent of the stock of Air Panama and administers the airline through the economic development agency of Panama, the Corporacion Financiera National ("COFINA"). The President of Panama is empowered to appoint the directors of COFINA, who in turn have the authority to vote the shares of Air Panama.

On March 5, 1988, the Noriega regime took control of Air Panama's operations in the United States by replacing the company's chief executive officer, Mario Oriani, with defendant Carlos Pere. Mr. Pere and two other named defendants, Fred Durling and Oderay Botello, exercised control of Air Panama in the United States until the Court issued a temporary restraining order on March 11, 1988.

On March 10, 1988, Ambassador Sosa, acting in his capacity as chairman of the board of directors of Air Panama, and acting on behalf of the President of the Republic of Panama, appointed a new board of directors to Air Panama. Ambassador Sosa also appointed Mr. Rene Picans as assistant to the Chairman of Air Panama, Mr. Mario Oriani as Regional Manager, and Ms. Marcela Cucalon as Regional Assistant Manager. But those persons could not take their positions without assistance from the Court.

Plaintiff filed this lawsuit on March 10, 1988. On March 11, 1988, after hearing argument of counsel, this Court entered a temporary restraining order precluding the defendants, their affiliates, agents, subsidiaries, directors, officers, and representatives, servants and employees from making any payments to, or transferring to the control of, the Noriega regime any funds or other property belonging to or properly held in the name of Air Panama and from interfering in any way with the exercise of control of all property of Air Panama by any person authorized by Ambassador Sosa. The Order also empowered the Sosa designees, Oriani, Picans, and Cucalon to assume their positions at the airline. After a further hearing, this Court extended the temporary restraining order on March 16, and again on March 21.

Upon receipt of this Court's March 16, 1988 order, Mr. Oriani, as Regional Manager of Air Panama, appointed the law firm of Cohen & Silver to advise the airline and to serve as counsel to Air Panama in all actions by or against Air Panama. Cohen & Silver, with the law firm of Arnold & Porter, are also counsel to the Republic of Panama.

On the same date, Ira J. Kurzban, Esq., and Terry Gross, Esq., filed a "Notice of Appearance of Counsel for Defendant Air Panama International, S.A." Mr. Gross also filed an application for permission to appear Pro Hac Vice as "counsel for Defendant Air Panama Internacional, S.A." Plaintiff opposed both applications. On March 21, 1988, Messrs. Kurzban and Gross also filed a "Motion to Dissolve Plaintiff's TRO and to Enter A TRO and Preliminary Injunction on Behalf of Defendant Air Panama."

This Order reaffirms the Court's ruling on plaintiff's motion for a temporary restraining order and denies the motion filed by Messrs. Kurzban and Gross to dissolve the temporary restraining order and to enter a temporary restraining order and preliminary injunction. It appears to the

---

**1.** On the basis of this recognition, two courts in related suits have entered preliminary injunctions enjoining several named defendant banks from transferring funds held in the name of the Republic of Panama to the Noriega/Palma regime. *See* Order Entering Preliminary Injunction, *Republic of Panama v. Citizens and Southern International Bank,* 682 F.Supp. 1544 (S.D. Fla.1988); Memorandum Opinion, *Republic of Panama v. Republic National Bank of New York,* 681 F.Supp. 1066 (S.D.N.Y.1988).

Court that Messrs. Kurzban and Gross, although styling their actions as "appearances" on behalf of Air Panama, are in fact attempting to intervene on behalf of the unrecognized Noriega/Palma regime. Therefore, the Court will treat their actions as an effort to intervene. Inasmuch as the Noriega/Palma regime has no standing to intervene, the applications to appear by Messrs. Gross and Kurzban are denied. Jurisdiction in this case is predicated upon the existence of a federal question and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1610. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 492–94, 103 S.Ct. 1962, 1970–72, 76 L.Ed.2d 81 (1983).

## II.

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

 It is well-settled in this jurisdiction that a preliminary injunction is warranted upon a showing by the plaintiff of the following four prerequisites:

(1) a substantial likelihood that plaintiff will prevail on the merits,

(2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted,

(3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and

(4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). Plaintiff has established each of these elements and is therefore entitled to the relief it seeks.

### A. *Likelihood of Success*

 The Court concludes that plaintiff is likely to succeed on the merits of its claim. This conclusion is founded upon the political question doctrine, which prescribes

that the recognition by the United States of a foreign government is a political question within the exclusive province of the Executive Branch. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410, 84 S.Ct. 923, 931, 11 L.Ed.2d 804 (1964); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 137–38, 58 S.Ct. 785, 791–92, 82 L.Ed. 1224 (1938). Thus, this Court must give "complete judicial deference"[2] to and is "conclusively b[ou]nd"[3] by the decision of the Executive Branch to recognize the government of President Delvalle as the lawful constitutional government of the Republic of Panama. Moreover, where property owned by a foreign government is located in the United States and two competing regimes claim to be the government which owns the property, recognition by the Executive Branch of one regime as the lawful foreign government conclusively establishes that government's title to the property.

Thus, in *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 104 F.Supp. 59 (N.D.Cal.1952), *modified*, 209 F.2d 467 (9th Cir.1953), the Court confronted a situation wherein the Chinese government owned an entity known as the "Bank of China" which had a bank account in a United States bank. Both the Nationalist government of China and the Peoples Republic government of China claimed title to the bank account. The court concluded that it was bound by the United States government's recognition of the Nationalist government and consequently awarded the account to the Nationalist government:

> It is not a proper function of a domestic court of the United States to attempt to judge which government best represents the interests of the Chinese State in the Bank of China. In this situation, the Court should justly accept, as the representative of the Chinese State, that government which our executive deems best able to further the mutual interests of China and the United States.

104 F.Supp. at 66.

In the instant case it is undisputed that Air Panama is owned by the Republic of

---

**2.** *Pfizer Inc. v. Government of India*, 434 U.S. 308, 320, 98 S.Ct. 584, 591, 54 L.Ed.2d 563 (1978).

**3.** *United States v. Pink*, 315 U.S. 203, 223, 62 S.Ct. 552, 560, 86 L.Ed. 796 (1942).

Panama. The Executive Branch has recognized the Delvalle government as the lawful government of the Republic of Panama. Therefore, under the political question doctrine, this Court accepts that recognition and consequently concludes that the Delvalle government is entitled to control Air Panama.

■ The arguments presented by Messrs. Kurzban and Gross ("movants") do not alter this conclusion. First, the movants claim that because Air Panama is a "private corporation," albeit owned by the government, the managerial appointments of President Delvalle and Ambassador Sosa must be examined under Panamanian law as if those appointments were acts of private stockholders. The Court finds that Panamanian law is not relevant to the issues in this case. This is not a dispute between private creditors over which creditor owns a piece of airline equipment. Here, it is clear that the Republic of Panama owns Air Panama. Instead, the issue presented is which rival government properly represents the Republic of Panama in the United States. That issue is to be determined not under Panamanian law governing private corporations,[4] but under the foreign relations law of the United States.

The act of state doctrine, companion to the political question doctrine, also obviates the need for the Court to inquire into private Panamanian law. The appointments by President Delvalle and Ambassador Sosa to the management of Air Panama are acts of state, that is, they are acts by the sovereign state of Panama, performed within the territory of Panama. Accordingly, these acts of state must be accepted by this Court as valid. Judicial inquiry into the law of the sovereign state underlying these acts is neither necessary nor appropriate:

> Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Underhill v. Hernandez,* 168 U.S. 250, 252, 18 S.Ct. 83, 84, 42 L.Ed. 456 (1897). *See also Oetjen v. Central Leather Co.,* 246 U.S. 297, 302–04, 38 S.Ct. 309, 310–11, 62 L.Ed. 726 (1918); *Ricaud v. American Metal Co.,* 246 U.S. 304, 310, 38 S.Ct. 312, 314, 62 L.Ed. 733 (1918).

Movants also challenge this Court's Orders, and ask this Court to void the recognition extended by the President and the Executive Branch of the United States to the Delvalle government on several other grounds. They claim that such recognition is "an improper interference in the internal affairs of Panama" and is, therefore, in violation of the United Nations Charter and the Charter of the Organization of American States.

■ *First,* movants ask this Court to take action which is clearly beyond its jurisdiction. As noted above, it is well-settled that all matters of recognition of a foreign

---

4. Furthermore, it appears to the Court that President Delvalle has acted in accordance with the relevant provisions of Panamanian law relating to Air Panama. COFINA, which holds the stock of Air Panama as trustee for the benefit of the Republic of Panama, and which has the power to appoint the directors of Air Panama, is the economic development agency of the Republic of Panama. President Delvalle, has the authority to appoint the board of directors and general manager of COFINA. Law No. 65, Article 15 (Exhibit B to Declaration of Cesar A. Rodriguez Maylin). Similarly, the President, acting through COFINA, has the power to appoint the board of directors and general manager of Air Panama. *See* Public Doc. No. 6927 (Exhibit A to Maylin Decl.). President Delvalle has in fact appointed a new board of directors of COFINA, and through Ambassador Sosa, a new board of directors of Air Panama.

After this Court entered a temporary restraining order, President Delvalle was also authorized to appoint new management to Air Panama for the purpose of preserving the airline assets in the United States, and this Court's continuing jurisdiction over the subject matter of this suit. *See Productos Carnic, S.A., v. Central American Beef and Seafood Trading Co.,* 621 F.2d 683, 686 (5th Cir.1980) (injunction against removing disputed property necessary to assure "a meaningful decision on the merits"); *Schrank v. Bliss,* 412 F.Supp. 28, 34 (M.D.Fla. 1976).

government are political questions that fall exclusively within the province of the Executive Branch:

> What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. Objections to its determination as well as to the underlying policy are to be addressed to it and not to the courts. Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination, although they are free to draw for themselves its legal consequences in litigations pending before them.

*Guaranty Trust Co. v. United States*, 304 U.S. at 137–38, 58 S.Ct. at 791–92. Moreover, the power of the Executive Branch to recognize a foreign government necessarily "includes the power to determine the policy which is to govern the question of recognition." *United States v. Pink*, 315 U.S. 203, 229, 62 S.Ct. 552, 565, 86 L.Ed. 796 (1942).

■ *Second,* movants claim that the recognition extended by the United States to the government of President Delvalle should be rejected by the Court because it constitutes "an interference in the internal affairs of Panama." This claim must also fail. Recognition of a foreign government by the United States is an important international event. That such recognition may have profound consequences within a foreign state is not surprising. But for the Court to take note of those consequences as a basis for voiding recognition would require the Court to conduct foreign policy for the United States in conflict with the Executive Branch and in breach of the Separation of Powers prescribed by the Constitution. *See Transportes Aereos de Angola v. Ronair, Inc.,* 544 F.Supp. 858, 862–63 (D.Del.1982).

■ Finally, the defendants in this action have no enforceable rights under the provisions of the United Nations Charter and the Charter of the Organization of American States. Those provisions relate entirely to relations among nations and "protect the sovereignty of states." *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 66–67 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). *See also United States v. Williams,* 617 F.2d 1063, 1090, 1092 n. 9 (5th Cir.1980) ("rights under international common law must belong to sovereign nations, not to individuals, just as treaty rights are the rights of the sovereign"). Thus, the treaties on which movants rely are not enforceable by the named defendants in United States courts. The treaties are enforceable only by states which are parties to the treaties, and then only in international forums or through "diplomatic negotiations between the sovereignties." *Pauling v. McElroy,* 164 F.Supp. 390, 393 (D.D.C.1958), *aff'd,* 278 F.2d 252 (D.C.Cir.), *cert. denied,* 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960). Based upon the foregoing, this Court concludes that there is a strong likelihood that plaintiff will succeed on the merits of its claim.

## B. *Irreparable Harm*

■ The Court also concludes that there is a substantial threat that plaintiff will suffer irreparable injury in the absence of an Order enjoining defendants from transferring the funds or other property of Air Panama and from interfering with the lawful exercise of control by Ambassador Sosa's designees. If the Noriega/Palma designees are permitted to transfer the assets of Air Panama to the Noriega/Palma regime, the property will likely be beyond the reach of plaintiff and of this Court, and irretrievably dissipated and lost. This possibility is itself sufficient to support a finding of irreparable injury. *See Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co.,* 621 F.2d 683, 686 (5th Cir.1980); *New York Land Co. v. Republic of Philippines,* 634 F.Supp. 279, 288 (S.D.N.Y.), *aff'd,* 806 F.2d 344 (2d Cir. 1986) ("Plaintiff has made a strong showing of irreparable harm. If the restraints are dissolved, the Properties could pass quickly out of the plaintiff's reach ... [or]

the Properties could be sold with the proceeds delivered out of the country.")

### C. *Balance of Hardships*

■ The movants have not demonstrated what injury will be suffered by the grant of a preliminary injunction, and this Court cannot discern any consequent injury to defendants. The Court's Order merely enjoins defendants from transferring the property of Air Panama and from interfering with the lawful control of Air Panama. Thus, the injunction protects the assets of Air Panama. The injury to plaintiff if the preliminary injunction is not granted far outweighs any harm to defendants if the injunction is granted.

### D. *Public Interest*

■ Finally, the Court concludes that a preliminary injunction in favor of plaintiff—the government recognized by the United States as the lawful government of the Republic of Panama—will serve the public interest. The injunction will prevent a transfer of assets into the hands of a regime whose policies and actions have been described by President Reagan as a "threat to the national security, foreign policy, and economy of the United States." Executive Order Prohibiting Certain Transactions With Respect to Panama at 1 (April 8, 1988). The injunction will also buttress the foreign policy of the United States which seeks to foster a "constitutional, democratic government in Panama." *Id.* *Cf. Bank of China v. Wells Fargo Bank & Union Trust Co.*, 92 F.Supp. 920, 924 (N.D. Cal.1950), *appeal dismissed*, 190 F.2d 1010 (9th Cir.1951). Thus, this requirement is also clearly met.

### III.

### APPEARANCES OF MESSRS. KURZBAN AND GROSS

■ The Court must now decide the issue raised by the attempts of Messrs. Kurzban and Gross to appear purportedly on behalf of Air Panama. Plaintiff has objected to their appearances on the ground that neither Ambassador Sosa nor anyone acting on his behalf has retained them to represent Air Panama. Further, according to plaintiff, in light of the recognition accorded the Delvalle government by the United States, only Ambassador Sosa, acting on behalf of the Delvalle government, could legitimately retain counsel for Air Panama. This Court agrees.

Inasmuch as Messrs. Kurzban and Gross were not retained by the Delvalle government, a question arises as to whose interests these attorneys in fact seek to represent. The Court finds that the attorneys in fact represent the interests of the Noriega/Palma regime. Thus, the Court will treat the matter of their appearance as an effort to intervene by the Noriega/Palma regime. Because the Noriega/Palma regime has not been recognized by the United States government, it has no right to appear in this Court. Accordingly, the motion to intervene is DENIED.

The attempted appearance of Messrs. Kurzban and Gross in this proceeding is akin to the attempt by Mr. Gross to appear and intervene on behalf of the Noriega/Palma regime in the other suits that have arisen out of the political disturbances in Panama. Mr. Gross entered an appearance in a related New York suit purportedly on behalf of the "Republic of Panama" and filed a motion to intervene on behalf of that entity. Judge Lloyd F. MacMahon determined that Mr. Gross in fact represented not the Republic of Panama but rather the Noriega/Palma regime. Judge MacMahon denied the motion to intervene:

> Intervenors, purporting to represent the Republic of Panama in the name of Minister Palma, cannot be heard. The executive's refusal to recognize the Palma government deprives it of standing. The Palma government has no cognizable interest to assert in this litigation, and, accordingly, its motion to intervene is denied.

*Republic of Panama v. Republic National Bank of New York*, 681 F.Supp. 1066, 1073 (S.D.N.Y.1988).

In a related case in this district, Mr. Gross moved to intervene on behalf of the "Government of Manuel Solis Palma ('Palma') and General Manuel Noriega ('Norie-

ga')." *Republic of Panama v. Citizens and Southern International Bank*, 682 F.Supp. 1544 (S.D.Fla.1988). Judge Sidney M. Aronovitz also rejected Mr. Gross' effort:

> The Executive branch's exclusive power to recognize and legitimize a foreign government is binding upon the courts and precludes a suit in United States courts by an unrecognized government.... This doctrine completely precludes the Palma government's intervention and participation in this litigation.

Order Denying Motions to Intervene at 1545, *Republic of Panama v. Citizens and Southern International Bank*, 682 F.Supp. 1544 (1988). Judge Aronovitz also rejected Mr. Gross' attempt to intervene on behalf of Banco Nacional de Panama on the basis of the well-recognized principle that "an agent of an unrecognized government is not permitted access to United States courts." *Id.* at 1546.

It clearly appears, and the Court so finds, that Messrs. Kurzban and Gross are in fact attempting to assert the interests of the Noriega/Palma regime. This effort must be rejected. Only governments recognized by the United States are entitled to access to United States courts. *Pfizer Inc. v. Government of India*, 434 U.S. 308, 319–20, 98 S.Ct. 584, 591–92, 54 L.Ed.2d 563 (1978); *Guaranty Trust Co. v. United States*, 304 U.S. at 137, 58 S.Ct. at 791. Correspondingly, agents and instrumentalities of unrecognized governments are denied access to United States courts. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 632 n. 25, 103 S.Ct. 2591, 2603 n. 25, 77 L.Ed.2d 46 (1983); *Federal Republic of Germany v. Elicofon*, 358 F.Supp. 747 (E.D.N.Y.1970), *aff'd* 478 F.2d 231 (2d Cir. 1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974); *Latvian State Cargo & Passenger S.S. Line v. McGrath*, 188 F.2d 1000 (D.C.Cir.), *cert. denied*, 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951).

## IV.

### ALIGNMENT OF PARTIES

■ Counsel for movants claim that if they are not permitted to appear for Air Panama, then counsel for the Republic will represent both plaintiff and defendants in this suit. That contention fails to take account of the change in position of the parties that occurred as a result of the Court's temporary restraining orders.

There is only one Air Panama, 100 percent of whose stock is owned and controlled by the government of the Republic of Panama. But as there are two groups asserting governmental powers on behalf of the Republic, so too are there two groups attempting on behalf of the Republic to control the airline.

At the outset of this action, Noriega/Palma agents had taken control of the airline in the United States. Then, those representatives of the Republic recognized by the United States as legitimately entitled to exercise the powers of government, brought this action to recover control of the airline, at least within the United States. As a result of this Court's temporary restraining orders, the lawful government of the Republic of Panama, the Delvalle government, has regained control of the airline and Ambassador Sosa's designees are now administering all the airline's affairs in the United States. Consequently, the Republic and Air Panama are no longer adverse parties. The position of the airline has shifted such that the interests of the Republic and the airline are coincident.

In such circumstances, it is the Court's duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). The proper alignment of the parties "must be ascertained from the principal purpose of the suit ... and the primary and controlling matter in dispute." *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941) (internal quotations omitted).

Thus, in shareholder derivative suits, which are not unrelated to the kind of case

presented here, courts customarily realign (as plaintiffs) the corporations initially named by the shareholders as defendants, whenever the courts determine that the management of the challenged corporations are not antagonistic to the claims of the shareholders. *See Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957); *Swanson v. Traer,* 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957); *Liddy v. Urbanek,* 707 F.2d 1222, 1224 (11th Cir. 1983) ("[A]s a practical matter, the corporation is initially named as a defendant. In this way the stockholder insures the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests.").[5] Because Air Panama now shares the interests of the Republic, the airline is properly aligned with the Republic as a plaintiff in this action. As such, counsel for the Republic may properly represent Air Panama in this action. Of course, the individuals named as defendants remain as defendants and are entitled to be represented by counsel of their choice.

## CONCLUSION

The Court ENTERS hereby a preliminary injunction against defendants herein, their affiliates, agents, subsidiaries, directors, officers, representatives, servants, employees, and attorneys, and those persons in active concert or participation with them, from making any payments to, or from transferring to the control of, the Noriega/Palma regime any funds, negotiable ticket stock, validating plates, aircraft or other property belonging to or properly held in the name of Air Panama Internacional, S.A., and from interfering in any way with entry onto all premises of Air Panama and exercise of control of all property of Air Panama by any person authorized by His Excellency Juan B. Sosa, Chairman of the Board of Air Panama and legal representative of the Republic of Panama in, and Ambassador to, the United States and recognized by the United States Secretary of State. FURTHER ORDERED that the plaintiff, by and through its newly appointed board of directors, shall not sell or otherwise dispose of any aircraft owned or leased at this time by the plaintiff, nor sell any of said aircraft's parts, nor make any expenditures in excess of $5,000, nor sell or encumber any other corporate assets valued at over $5,000, nor enter into any binding contract the performance of which shall take place or continue more than one year from the date of this order, nor fire any employees except for cause, nor raise nor lower any employee's salary except as called for by increases

5. In derivative actions where jurisdiction was based on *diversity,* and where the realignment was based on facts pre-existing the complaint and not on the basis of interim relief granted by the courts, questions have arisen about the effect of such realignment on the courts' continuing jurisdiction. In the instant case, by contrast, jurisdiction is predicated on the presence of a federal question and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1610. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 492–94, 103 S.Ct. 1962, 1970–72, 76 L.Ed.2d 81 (1983). Thus realignment of the parties does not affect the continuing federal question jurisdiction of this Court.

Moreover, realignment is proper in this case not because of facts pre-existing the complaint, but because of the interim orders by the Court acting pursuant to its proper federal jurisdiction. In such case, the Court continues to be seized with federal jurisdiction under the doctrine of ancillary jurisdiction. *See, e.g., Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720 (1937) (jurisdiction

"is ancillary and dependent, and therefore the jurisdiction follows that of the original suit"); *Freeman v. Howe,* 65 U.S. (24 How.) 450, 460, 16 L.Ed. 749 (1860) (jurisdiction is "ancillary and dependent, supplementary merely to the original suit, out of which it had arisen").

In *Republic of China v. American Express Co.,* 195 F.2d 230, 234 (2d Cir.1952), the court held that an order discharging a bank which had interpleaded the Nationalist and Communist claimants to the property of the government of China and which "left no one but aliens as parties to the suit" did not defeat the court's jurisdiction because the "subsequent litigation will be ancillary to the original suit and the initial jurisdiction of that is sufficient." The Second Circuit affirmed the district court ruling on this point: "Jurisdiction in the later stage survives notwithstanding all litigants being alien, because of the continued presence ... of a federal question." *Republic of China v. American Express Co.,* 95 F.Supp. 740, 745 (S.D.N.Y. 1951), *aff'd,* 195 F.2d 230 (2d Cir.1952).

in the cost of living, without prior approval of this court.

The court DENIES hereby the Motion to Dissolve Temporary Restraining Orders and For a Temporary Restraining Order and Preliminary Injunction.

The Court DENIES hereby the applications of Messrs. Kurzban and Gross to intervene formally on behalf of the Noriega/Palma regime and to appear on their behalf, but these representatives shall be given notice by the plaintiff of any proposed actions which require the court's approval as per the present order. The court will entertain a further motion to intervene from these representatives should the present situation of non-recognition of the Noriega regime change.

DONE AND ORDERED.