Mark **NEWBY**, Plaintiff,

v.

**ENRON CORPORATION,**
et al., Defendants.

**Amalgamated Bank, Individually and On Behalf of All Others Similarly Situated, Plaintiffs,**

v.

**Kenneth L. Lay, et al., Defendants.**

Nos. CIV.A. H–01–3624,
CIV.A. H–01–4198.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 9, 2002.

Eric D Green, Boston, MA, mediator pro se.

Richard J Zook, Cunningham Darlow et al., Houston, TX, Roger B Greenberg, Schwartz Junell et al., Houston, TX, for Mark Newby.

William S Lerach, Milberg Weiss et al., San Diego, CA, Roger B Greenberg, Schwartz Junell et al., Houston, TX, for Regents of University of California.

Ira Press, Kirby McInerney et al., New York, NY, for Local 710 Pension Fund.

R Paul Yetter, Yetter and Warden, Houston, TX, Michael J Pucillo, Burt & Pucillo, West Palm Beach, FL, Glen DeValerio, Jeffrey C Block, Berman DeValerio et al., Boston, MA, Vincent R Cappucci, Entwistle & Cappucci, New York, NY, James M Finberg, Richard M Heimann, Melanie M Piech, Lieff Cabraser et al., San Francisco, CA, Stephen Lowey, Lowey Dannenberg et al., White Plains, NY, Wendy Hope Zoberman, Berman DeValerio et al., West Palm Beach, FL, Johnston de Forest Whitman, Jr., Andrew J Entwistle, Entwistle & Cappucci LLP, New York, NY, Neil L Selinger, Lowey Dannenberg et al., White Plains, NY, for Florida State Bd. of Administration.

Charles R. Parker, Hill and Parker, Houston, TX, James M Finberg, Richard M Heimann, Melanie M Piech, Elizabeth Cabraser, Lieff Cabraser et al., San Francisco, CA, Stephen Lowey, Lowey Dannenberg et al., White Plains, NY, Neil L Selinger, Lowey Dannenberg et al., White Plains, NY, for NYC Funds.

Sherrie Savett, Berger & Montague PC, Philadelphia, PA, Arthur Stock, Berger & Montague PC, Philadelphia, PA, Thomas W Sankey, Sankey & Luck, Houston, TX, Paul F Bennett, Gold Bennett et al., San Francisco, CA, for JMG Capital Partners, LP, JMG Triton Offshore Fund, Ltd., TQA Master Fund, Ltd., TQA Master Plus Fund Ltd.

Thomas E. Bilek, Hoeffner Bilek & Eidman, Houston, TX, for Deutsche Asset Management, HBK Investments, Central States Pension Fund, James Brill, Michael Koroluk, Seth Abrams, Elmar A. Busch, John P. McCarthy Money Purchase Plan, Kenneth Franklin, Warren Pinchuck, Mark T. Spathes, Robert Pearlstein, Izidor Klein, Sidney Kessous, Steven Frank, Robert J. Casey, II, Ruth I. Horton, J. Michael Gottesman, Avigayil Greenberg,

Robert Christianson, Ernest Gottkiener, Mahin S. Mashayekh, Barbara D. Lee, James Morton Elliott, IRA, Fathollah Hamedani, Andrew J. Karcich, Naomi Rapheal, James J. Daly.

William B Federman, Dreier Baritz et al., Oklahoma City, OK, Richard A Speirs, Zwerling Schachter et al., New York, NY, Jeffrey C Zwerling, Zwerling Schachter et al., New York, NY, for Davidson Group.

Jack Edward McGehee, McGehee & Pianelli, Houston, TX, Robert B Weintraub, Daniel W Krasner, Wolf Haldenstein et al., New York, NY, for Proposed Preferred Purchaser Lead Plaintiffs, Henry H. Steiner.

Jack Edward McGehee, McGehee & Pianelli, Houston, TX, for Harold Karnes.

Tom Alan Cunningham, Cunningham Darlow et al., Houston, TX, Martin D Chitwood, Jeffrey H Konis, Chitwood & Harley, Atlanta, GA, Sidney S Liebesman, Jay W Eisenhofer, Grant & Eisenhofer PA, Wilmington, DE, Edward H Nicholson, Jr., Chitwood & Harley, Atlanta, GA, for State Retirement Systems Group.

Ronald Joseph Kormanik, Sydow Kormanik, Houston, TX, for Private Asset Management.

Jay W. Eisenhofer, Grant & Eisenhofer PA, Wilmington, DE, for Employees Retirement System of Ohio.

Sidney S. Liebesman, Jay W. Eisenhofer, Grant & Eisenhofer PA, Wilmington, DE, for Teachers Retirement System of Ohio.

Gregory Sean Jez, Fleming & Assoc., Houston, TX, for Jane Bullock, John Barnhill, Don Reiland, Scott Borchart, Michael Mies, Virginia Acosta, Jim Hevely, Mike Bauby, Robert Moran, Jack Turner, Marilyn Turner, Hal Moorman, Miltin Tate, Jose Plaintiffs, Fleming & Associates, LLP, John Odam, Peggy Odam, Marian

Rosen, Fred A. Rosen, Houston Federation of Teachers, Annie M. BanksLarry D. Barnett, Robert Chazen, Clifford D. Gookin, Carl Herrin, Todd L. Johnson, David H. Lowe, Robin Saex, John Siemer, Elizabeth Siemer, Anthony G. Tobin, John E. Williams, Ruben Delgado, Irene Delgado, Preston Clayton.

David C. Mattax, Office of Atty. Gen., Austin, TX, Rose Ann Reeser, Texas Atty. Gen., Consumer Protection Div., Austin, TX, for Employees Retirement system of Texas, Teacher Retirement System of Texas, Texas Comptroller of Public Accounts, Texas Tomorrow Fund

Stephen D. Oestreich, Wolf Popper Ross Wolf and Jones, New York, NY, for Turnberry Asset Management.

Deborah R. Gross, Law Offices of Bernard M. Bross PC, Philadelphia, PA, for Stoneridge Investment Partners, LLC.

Theodore C. Anderson, Kilgore & Kilgore, Dallas, TX, Neil Rothstein, James E. Miller, Scott & Scott, LLD, Colchester, CT, for Archdiocese of Milwaukee Supporting Fund, Inc.

William S. Lerach, Helen J. Hodges, James I. Jaconette, John A. Lowther, Alexandrta S. Bernay, Milberg Weiss et al., San Diego, CA, Roger B. Greenberg, Schwartz Junell, Houston, TX, for Amalgamated Bank.

Tom Alan Cunningham, Cunningham Darlow et al., Houston, TX, Herbert Blake Tartt, Jr., Beirne Maynard et al., Houston, TX, Robert M. Kornreich, Robert C. Finkel, Wolf Popper, New York, NY, Allyson L. Mihalick, Beirne Maynard et al., Houston, TX, for Pulsifer & Associates.

Sherrie Savett, Arthur Stock, Berger & Montague PC, Philadelphia, PA, Joseph Albert McDermott, III, Houston, TX, for Staro Asset Management, LLC.

Roger B. Greenberg, Schwartz Junell et al., Houston, TX, Jonathan M. Plasse,

Goodkind Labaton et al., New York, NY, for Ariel Holdings LLC.

Saul Roffe, Sirota & Sirota, LLP, New York, NY, for Allen Barkin, Beatrice Barkin.

Sean F. Greenwood, Houston, TX, for Jerome F. Faquin.

Tom Alan Cunningham, Cunningham Darlow et al., Houston, TX, for Kevin Kueser, Patricia D. Parsons, Howard Bruce Klein, William Scoular.

John G. Emerson, Jr., Emerson Firm, Houston, TX, for Roy E. Rinard, Steve Lacey.

Richard Frankel, Hackerman Peterson et al., Houston, TX, for Frank Wilson.

James D. Baskin, III, Baskin Bennett et al., Austin, TX, for Muriel P. Kaufman, IRA.

William B Federman, Dreier Baritz et al., Oklahoma City, OK, for Victor Ronald Frangione.

Thomas E. Bilek, Hoeffner Bilek & Eidman, Houston, TX, Michael D. Donovan, Donovan Searles, LLC, Philadelphia, PA, for Susan Copley.

Steven E. Cauley, Cauley Geller, Little Rock, AR, for William Davis, Roxann Davis, E. Bruce Chaney.

Robert M. Kornreich, Robert C. Finkel, Wolf Popper, New York, NY, for Murray Van De Velde.

George M. Fleming, Fleming & Assoc., Houston, TX, for Harold Ahlich, Frances Ahlich, Irving Babson, Mary Bain Pearson.

Jeffery B. Kaiser, Kaiser & May, Houston, TX, for William Coy

William S. Lerach, Milberg Weiss et al., San Diego, CA, George M. Fleming, Fleming & Assoc., Houston, TX, for John Mason.

James F. Marshall, Judicial Watch, Inc., San Marino, CA, for Ralph A. Wilt, Jr.

Andrew J. Mytelka, Greer Herz & Adams, Galveston, TX, for American Nat. Ins. Co., American Nat. Investment Accounts, Inc., SM & R Investments, Inc., American Nat. Property and Cas. Co., Standard Life and Acc. Ins. Co., Farm Family Life Ins. Co., Farm Family Cas. Ins. Co., National Western Life Ins. Co.

Debra Brewer Hayes, Reich & Binstock, Houston, TX, for Marcus Oates.

Stephen D. Susman, Susman Godfrey, Houston, TX, for Enron Corp.

Richard Bruce Drubel, Jr., Boies Schiller et al., Hanover, NH, John W. Keker, Kerker & Van Nest LLP, San Francisco, CA, for Andrew S. Fastow.

James E. Coleman, Jr., Carrington Coleman et al., Dallas, TX, Robin C. Gibbs, Gibbs & Bruns, Houston, TX, Charles F. Richards, Jr., Richards Layton et al., Wilmington, DE, David Clarke, Jr., Keara M. Gordon, Piper Mabury et al. Washington, DC, for Kenneth L. Lay.

Ronald Gene Woods, Houston, TX, Robin C. Gibbs, Gibbs & Bruns, Houston, TX, Bruce A. Hiler, O'Melveny & Myers, Washington, DC, Jeffrey Kilduff, O'Melveny & Myers, McLean, VA, Robert M. Stern, Washington, Dc, for Jeffrey J. Skilling.

Russell "Rusty" Hardin, Jr., Rusty Hardin and Assoc., Houston, TX, Daniel F. Kolb, Sharon Katz, Davis Polk et al., New York, NY, for Arthur Andersen LLP.

Barry G. Flynn, Houston, TX, for David B. Duncan.

George W. Billy Shepherd, III, Cruse Scott et al., Houston, TX, Michael Warden, Sidley Austin et al., Washington, DC, for D. Stephen Goddard, Jr.

Eric J.R. Nichols, Beck Redden & Secrest, Houston, TX, for Michael J, Kopper, Michael J. Kipper.

Mark K. Glasser, King & Spalding, Houston, TX, for LJM2 Co-Investment LP.

Jack C. Nickens, Nickens Lawless et al., Houston, TX, for Richard A. Causey, James V. Derrick, Jr., J. Clifford Baxter, Mark A. Frevert, Stanley C. Horton, Mark A. Frevert, Stanley C. Horton, Kenneth D. Rice, Richard B. Buy, Lou L. Pai, Charles A. LeMaistre, Joe H. Foy, Mark E. Koenig, Steven J. Kean, J. Mark Metts, Cindy K. Olson, Jeffrey McMahon, Michael S. McConnell.

Charles G. King, III, James P. Pennington, King & Penington, Houston, TX, Paul Vizcarrondo, Jr., Jonathan E. Pickhardt, Wachtell Lipton et al., New York, NY, for Goldman Sachs & Co., Banc of America Securities LLC, Salomon Smith Barney, Inc.

Robin C. Gibbs, Gibbs & Bruns, Houston, TX, for Robert A. Belfer, Norman P. Blake, Jr., Ronnie C. Chan, John H. Duncan, Wendy L. Gramm, Robert K. Jaedicke, John Wakeman, Bruce G. Wilson, John Mendelson, Paulo V. Ferraz Pereira, Frank Savage, Herbert S. Winokur, Jr., Jerome J. Meyer, Charles E. Walker.

Jack C. Nickens, Nickens Lawless et al., Houston, TX, Barnes H. Ellis, David H. Angeli, Stoel Rives, LLP, Portland, OR, for Joseph M. Hirko.

Jack C. Nickens, Nickens Lawless et al., Houston, TX, Amy Joseph Pederson, William F. Martson, Zachary W. L. Wright, Tonkon Torp LLC, Portland, OR, for Ken L. Harrison.

Jack C. Nickens, Nickens Lawless et al., Houston, TX, Thomas J. Blessington, for Joseph W. Sutton.

Jack C. Nickens, Nickens Lawless et al., Houston, TX, Jennifer Piskun, John J. McKetta, Graves Dugherty et al., Austin, TX, for Rebecca P. Mark-Jusbasche.

H. Bruce Golden, Golden & Owens LLP, Houston, TX, for John A. Urquhart.

William S. Lerach, Milberg Weiss et al., San Diego, CA, Thomas E. Bilek, Hoeffner Bilek & Eidman, Houston, TX, Steven G. Schulman, Milberg Weiss Bershad Hynes and Lerach, New York, NY, for Office of New York State Comptroller, movant.

Kenneth Andrew Zimmern, Thompson & Zimmern, Houston, TX, for Joseph L. Trahan, distributed Network Services Corp., movants.

Joseph A. Grundfest, Stanford, CA, for State of Wis. Investment Bd., movant.

Carolyn S. Schwartz, New York, NY, trustee pro se.

Roger B. Greenberg, Schwartz Junnell et al., Houston, TX, for New York State Teachers' Retirement system, movant.

Bonnee Linden, Hewlett, NY, movant pro se.

Don R. Sampen, Illinois Assist. Atty. Gen., Chicago, IL, for State of Illinois.

John K. Villa, Mary G. Clark, George A. Borden, Williams & Connolly LLP, Washington, DC, for Vinson & Elkins LLP, Ronald T. Astin, Joseph Dilg, Michael P. Finch, Max Hendrick, III, movants.

Mark D. Starr, Fredrick F. Neid, Don Sternberg, Assist. Atty. Gen., L. Steven Grasz, Deputy Atty. Gen, Lincoln, NE, for Nebraska Investment Council, Nebraska Public Employees Retirement systems, movants.

Daniel J. Doyle, Office of Atty. Gen. Litigation Section, Harrisburg, PA, Thomas J. Blessington, Office of Atty. Gen., Philadelphia, PA, for Commonwealth of Penn. Employees Retirement System, Commonwealth of Penn. Public School Employees' Retirement System, movants.

## MEMORANDUM OPINION AND ORDER

ROSENTHAL, District Judge.

In this securities class action alleging insider trading, plaintiff, Amalgamated Bank, asked this court to issue a temporary restraining order against twenty-nine current and former officers, inside directors, and outside directors of Enron Corporation, "freezing" the proceeds from their sales of Enron securities from October 19, 1998 to November 27, 2001. The narrow issues addressed in this opinion are whether this court has the authority to issue such an order and whether the present record provides the necessary support. This opinion does not decide any issues of defendants' liability for the violations alleged.

Based on the parties' pleadings and briefs, the arguments of counsel, and the governing law, this court concludes that the Supreme Court's opinion in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), does not bar this court from considering the relief Amalgamated seeks. This court also concludes that the present record does not provide a sufficient basis for the issuance of a temporary restraining order freezing the proceeds of each individual defendant's sales of Enron stock.

The reasons for these rulings are stated below.

### I. Background

Enron is an Oregon corporation with its principal place of business in Texas, which, among other things, owns and trades in various commodities. Amalgamated is the trustee for the Long View Collective Investment Fund, the Long View Core Bond Index Fund, and certain other trust accounts. As trustee of these funds, Amalgamated purchased over 13,000 shares of

Enron stock and $6 million in Enron bonds from October 19, 1998 to November 27, 2001. Amalgamated claims damages of over $10 million due to defendants' actions that allegedly concealed adverse financial information regarding Enron from the investing public. Amalgamated claims that defendants' actions led to the artificial inflation of the price of Enron stock, particularly in 2000; the precipitous decline of the stock price in the latter part of 2001, when the previously concealed information was disclosed; and, ultimately, Enron's bankruptcy filing in December 2001.

Amalgamated filed this case as a class action on behalf of persons who purchased the publicly traded securities of Enron Corporation between October 19, 1998 and November 27, 2001. The defendants are twenty-nine current and former inside and outside directors of Enron and current and former officers of Enron and its subsidiaries, as well as Arthur Andersen, L.L.P. In its complaint, Amalgamated alleges a series of fraudulent public representations of Enron's profitability, primarily involving four categories of accounting treatment that made Enron's financial statements, and public statements by Enron officials about Enron's financial performance and prospects, false.[1] Amalgamated also alleges that the individual defendants sold Enron stock between October 1998 and November 2001, while in possession of nonpublic information material to Enron's financial results.

In its amended complaint, Amalgamated alleges that the individual defendants violated sections 10(b) and 20A of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j, 78t–1) by, among other things, trading Enron securities at prices artificially inflated due to the concealment of materially adverse "inside" information. (Docket Entry No. 25, ¶¶ 153–63, 168–70). Amalgamated also alleges violations of section 11 of the Securities Act of 1933 ("Securities Act") (15 U.S.C. § 77k), based on untrue statements of material fact contained in Enron's registration statements for certain securities. (Docket Entry No. 25, ¶¶ 171–77). Amalgamated also claims that Fastow, Lay, and Skilling are jointly and severally liable for the acts of the other individual defendants under section 20(a) of the Exchange Act (15 U.S.C. § 78t) and section 15 of the Securities Act (15 U.S.C. § 77o). (Docket Entry No. 25, ¶¶ 164–67, 177).

As remedies for these violations, Amalgamated seeks a preliminary and permanent injunction imposing a constructive trust and/or an asset freeze on the proceeds of defendants' alleged insider trading; an accounting of these proceeds; disgorgement of these proceeds; and restitution of the money paid for securities by members of the class, as well as compensatory damages. In addition, Amalgamated seeks rescission or a rescissionary measure of damages as to its section 11 claims under the Securities Act, costs,

---

1. Amalgamated specifically alleges that the following categories of accounting treatment resulted in false financial statements:

 1. The failure to consolidate the JEDI, Chewco, and LJM1 and LJM2 partnerships in the Enron financial statements. Chewco was allegedly formed in 1997; JEDI at a later date; LJM1 and LJM2 in 1999.

 2. The failure to account for stock issued to capitalize Raptor I–IV in the second quarter of 2000 and the first quarter of 2001 as a reduction in shareholders' equity.

 3. The failure to make proposed audit adjustments and reclassifications presented by Arthur Andersen on the basis of "immateriality."

 4. The failure timely to take write-downs for impaired long term assets, specifically by failing in early 2001 adequately to reflect the deterioration in the value of the broadband assets and content services business. (Docket Entry No. 25, at 34–40).

and attorney fees. (Docket Entry No. 25, at 75–76).

In the *ex parte* motion for a temporary restraining order, Amalgamated asks this court to impose a constructive trust on the proceeds obtained by the individual defendants from their sales of Enron stock from October 19, 1998 to November 27, 2001 and an immediate accounting of those proceeds. (Docket Entry No. 7, at 13–15). Specifically, Amalgamated asks this court to enter "an order requiring each Individual Defendant to segregate all proceeds from Enron stock sales during the Class Period, in whatever present form those proceeds may be, and invest them in short-term (six months or less) United States Treasury securities," and an order requiring the "Individual Defendants to provide, among other things, the name and account number for all bank accounts held by the defendants, every transaction in which any funds or assets were taken from those accounts, and a listing of all transactions involving investments of funds from stock sales."[2] (Docket Entry No. 7, at 13 and 15). Amalgamated argues that the temporary restraining order is necessary to prevent the individual defendants from dissipating or concealing the proceeds of their sales of Enron stock during the Class Period.[3] Amalgamated also seeks an order for expedited, particularized discovery under section 21D(b)(3) of the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u–4(b)(3)(B)).

In response, defendants argue that Amalgamated is essentially seeking legal damages and that this court has no power to order even a limited asset freeze to aid in the collection of a money judgment before any judgment is entered. Defendants also argue that even if this court does have the power to consider an asset freeze, Amalgamated has made no particularized showing as to any of the individual defendants of a risk of irreparable harm in the event the temporary restraining order does not issue.

At a hearing held on December 7, 2001, counsel for Amalgamated and defendants presented argument. The parties have submitted briefing on the threshold issue of this court's authority to consider Amalgamated's application. This court has very carefully considered the arguments presented at the hearing and in the motion and briefs. This court concludes that while it has the authority to consider the injunctive order requested, the record does not support a temporary restraining order that would "freeze" the proceeds of three years of stock trades by the twenty-nine individuals whose roles and participation in Enron's financial matters varied, without allegations or evidence that each, or any, defendant has, or is likely to, conceal the stock sales proceeds or profits or place them beyond reach, absent immediate judicial intervention.

## II. The Issue of the Authority to Consider the Injunction Sought

The threshold issue is whether this court has the power to consider the temporary restraining order Amalgamated seeks. Defendants argue, based on *Grupo Mexi-*

---

**2.** At the hearing, plaintiffs suggested that, alternatively, this court could order the proceeds be paid into a court fund or escrow. The effect is a "freeze" of defendants' funds. *See, e.g., Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 995 (Fed.Cir.1985) (court refused to order payment of funds into court registry finding no relevant difference from an order "freezing" the funds).

**3.** In support of its motion, Amalgamated submits the affidavit of James I. Jaconette, one of its attorneys, who appends numerous news articles, as well as Enron press releases and SEC filings, to his affidavit. In addition, Amalgamated submits the affidavit of Marc I. Steinberg, a professor of securities law; and Charles R. Drott, a certified public accountant and certified fraud examiner.

*cano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), that the requested prejudgment restraint on defendants' assets is beyond this court's power. Amalgamated responds that *Grupo Mexicano* does not preclude the issuance of a limited prejudgment asset freeze in aid of the equitable relief Amalgamated seeks.

## A. The *Grupo Mexicano* Standard

In *Grupo Mexicano,* an association of investors purchased notes issued by Grupo Mexicano de Desarrollo, S.A., a Mexican holding company involved in toll road construction. 527 U.S. at 310, 119 S.Ct. 1961. Grupo Mexicano experienced financial trouble and was unable to make an interest payment. *Id.* at 311, 119 S.Ct. 1961. After negotiations failed to restructure the debt, plaintiff, one of the note purchasers, accelerated the principal amount and filed suit in federal district court for breach of contract, seeking money damages as the only remedy. *Id.* Alleging that Grupo Mexicano was near or at insolvency and was giving Mexican creditors priority, plaintiff sought a preliminary injunction freezing Grupo Mexicano's assets to secure its ability to pay any future judgment. *Id.* at 312, 119 S.Ct. 1961. The district court granted the injunction and the Second Circuit Court of Appeals affirmed.

In a five to four decision, the Supreme Court reversed. The Court framed the question before it as "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310, 119 S.Ct. 1961. The Court held that the district court did not have the power to issue the injunction "[b]ecause such a remedy was historically unavailable from a court of equity" in a suit seeking money damages. *Id.* at 333, 119 S.Ct. 1961. The Court held that federal courts

have the equity jurisdiction that was exercised by the English Court of Chancery " 'at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789 (1 Stat. 73).' " *Id.* at 318, 119 S.Ct. 1961 (quoting DOBIE, HANDBOOK OF FEDERAL JURISDICTION AND PROCEDURE 660 (1928)). The Court further noted that regardless of the merger of the formerly separate courts of law and equity by the Federal Rules of Civil Procedure, " 'the substantive principles of Courts of Chancery remain unaffected.' " *Id.* at 322, 119 S.Ct. 1961 (quoting *Stainback v. Mo Hock Ke Lok Po,* 336 U.S. 368, 382 n. 26, 69 S.Ct. 606, 93 L.Ed. 741 (1949)). Based on its review of historical equity jurisprudence, the Court concluded that it must "follow the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id.* at 321, 119 S.Ct. 1961. The district court's prejudgment asset freeze used equity for a purpose not historically available. The Supreme Court held that the district court did not have the power to issue a prejudgment preliminary injunction limiting the defendant's use of assets if the plaintiff sought only money damages. *Id.* at 333, 119 S.Ct. 1961.

In *Grupo Mexicano,* the Supreme Court distinguished its earlier decision in *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). In that case, plaintiffs alleged that they had purchased securities based upon fraudulent misrepresentations in the sale and advertisement, in violation of sections 12 and 22 of the Securities Act of 1933 (15 U.S.C. §§ 77l and 77v). As remedies, plaintiffs requested rescission of the sales induced by fraud, restitution of the amounts paid, an accounting, and appointment of a receiver. Alleging that the defendant corporation was dissipating its assets, plaintiffs also sought an injunction restraining the transfer or disposition of

any of the corporate assets. *See Deckert,* 311 U.S. at 288, 61 S.Ct. 229. The Supreme Court affirmed the district court's power to enter a prejudgment preliminary injunction freezing those assets because plaintiffs did not seek only money damages, but also equitable remedies of rescission and restitution. *Id.* at 289, 61 S.Ct. 229. The preliminary injunction issued in *Deckert* "was a reasonable measure to preserve the status quo pending final determination of the questions raised by [a suit in equity]." *Grupo Mexicano,* 527 U.S. at 325, 119 S.Ct. 1961. *Grupo* held that *Deckert* was "not on point [in a suit for money damages only] because, as the [*Deckert*] Court took pains to explain, 'the bill state[d] a cause [of action] for equitable relief.' " *Id.* (citing *Deckert,* 311 U.S. at 288, 61 S.Ct. 229). "The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." *Id.*

In *Grupo Mexicano,* the Court also approved its prior holding in *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), which denied an asset-freezing injunction. In *De Beers,* the United States brought suit against several corporations seeking an injunction to restrain future antitrust violations under the Sherman Act and the Wilson Tariff Act. The government also sought a preliminary injunction to prevent defendants from removing their assets from the country pending adjudication on the merits. The government argued that the preliminary injunction was necessary so that the assets would be available in order to enforce, in an appropriate contempt proceeding, any final injunction entered against the defendants. *Id.* at 215, 65 S.Ct. 1130. The *De Beers* Court concluded that the district court did not have the power to issue the requested injunction because it dealt "with a matter lying wholly outside the issues in the suit." *Id.* at 220, 65 S.Ct. 1130. *De Beers* confirmed that a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." *Id.* at 220, 65 S.Ct. 1130. However, the only injunction the court could issue to enforce the antitrust statutes was an injunction restraining future violations of those laws. The prejudgment asset-freezing injunction improperly dealt with property which could not be dealt with in any final injunction available to the court. *Id.*[4]

The Fourth Circuit Court of Appeals has provided the most thorough relevant analysis of *Grupo Mexicano.*[5] In *United States ex rel. Rahman v. Oncology Associ-*

---

**4.** In addition to *Deckert* and *De Beers,* the *Grupo Mexicano* Court also distinguished *United States v. First Nat'l City Bank,* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965), on the grounds that the injunction issued in that case was statutorily authorized, the public interests involved justified the injunction, and the creditor had asserted an equitable lien on the property enjoined. *See Grupo Mexicano,* 527 U.S. at 326, 119 S.Ct. 1961.

**5.** Since *Grupo Mexicano,* a number of cases have examined its application, but only one case appears to have involved causes of action asserted under the federal securities laws. In *Netwolves Corp. v. Sullivan,* 2001 WL 492463 (S.D.N.Y.2001), the court was not asked to freeze the assets of the defendant. Instead, the court was considering a TRO ordering defendant to issue opinion letters concerning the right of plaintiffs to sell their stock. The court noted in a footnote that *Grupo* was inapplicable because the TRO sought in no way affected defendant's assets.

Besides the Fourth Circuit, only the Second and Ninth Circuits have addressed the application of *Grupo Mexicano.* The Ninth Circuit applied *Grupo Mexicano,* in the context of a derivative shareholder's suit, to a preliminary injunction restraining the completion of a stock swap and liquidation of a corporation. *Walczak v. EPL Prolong, Inc.,* 198 F.3d 725

*ates P.C.,* 198 F.3d 489, 492 (4th Cir.1999), the court upheld a prejudgment asset-freezing injunction in a federal False Claims Act suit. In that case, the plaintiff, the United States, presented facts showing that the defendant health care providers had defrauded Medicare and related programs and "thereafter were engaging in complex reorganizations and transfers of assets to insulate themselves from liability." In its complaint, the government had alleged a right to recover damages under the False Claims Act and other statutes. The government had also pleaded unjust enrichment and invoked equitable remedies, seeking the imposition of a constructive trust on, and disgorgement of, "funds or property" that were proceeds of, or purchases from, illegal reimbursements from the government. *Id.* at 493. The district court issued the injunction before the Supreme Court decided *Grupo Mexicano,* but denied defendant's motion to dissolve the injunction after the decision issued. The Court of Appeals affirmed.

Following an extensive analysis, the Fourth Circuit concluded that when "both money damages and equitable relief are sought . . . , the controlling authority is not *Grupo* but *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)." The court emphasized that the *Grupo Mexicano* "holding is carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions solely at law." The *Grupo* Court "was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed." *Id.* at 496.

From the Supreme Court cases, the Fourth Circuit identified the principles that apply when a plaintiff seeks a prejudgment injunction to prevent a defendant from transferring assets:

> First, where a plaintiff creditor has no lien or equitable interest in the assets of a defendant debtor, the creditor may not interfere with the debtor's use of his property before obtaining judgment. A debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property. Accordingly, a debt claim does not, before reduction to judgment, authorize prejudgment execution against the debtor's assets.
>
> . . . . .
>
> On the other hand, when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.

*Id.* at 496.[6]

█ Following *Rahman's* framework, this court begins with an analysis of the

---

(9th Cir.1999). The court determined that *Grupo Mexicano* did not apply to bar the issuance of this injunction because it did not impose a "freeze" of defendants' assets. *Id.* at 730. In *ContiChem LPG v. Parsons Shipping Co., Ltd.,* the Second Circuit affirmed, based on *Grupo Mexicano,* the district court's denial of a preliminary injunction preventing disposal of the defendant's assets in a case

that sought only money damages. 229 F.3d 426, 430 (2d Cir.2000).

6. District courts since *Grupo Mexicano* have consistently recognized the requirement that a private plaintiff must allege a cognizable claim in equity, having a sufficient nexus to the assets sought to be enjoined, before a court may issue a prejudgment injunction

claims Amalgamated raises to determine whether they seek cognizable equitable relief, so that *Deckert,* rather than *Grupo,* governs. If plaintiffs are seeking cognizable relief in equity, they must show a sufficient nexus between the assets sought to be frozen and the equitable relief plaintiffs request. The second step, as required by *De Beers,* is to determine whether the temporary restraining order is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed.

■ The *Rahman* analysis involved two aspects not present here. In *Rahman,* the court relied upon the presence of the government as the plaintiff. When interim equitable relief is authorized and the public interest is involved, the doctrine applies that "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Id.* (citations and internal quotations omitted). The government is not a party to this case. Amalgamated argues that although the claims it raises are those of private parties, the size of the alleged fraud implicates the public interest and

allows this court to "go much farther ... to give ... relief." ' *Id.*

Second, although the court in *Rahman* affirmed the district court's authority to grant the temporary restraining order, it noted the unusual procedural posture of that case. For the purpose of the TRO, the court, with defendants' agreement, accepted as true the government's allegations that defendants had made recent money transfers to the Caribbean Island of Nevis, had sold large amounts of equipment, and were selling the assets that allowed them to operate. *Id.* at 493, 501–02. In affirming the injunction, the appellate court stated that the defendants could seek an evidentiary hearing in the district court and require the factual findings necessary to support the continuation of the injunction. *Id.* at 502. In the present case, by contrast, Amalgamated alleges no facts in the amended complaint, or in the application for the temporary restraining order, evidencing dissipation or concealment of the proceeds or profits of Enron stock sales as to any of the individual defendants.

With these points in mind, this court applies the analysis required by *Grupo*

---

freezing or limiting a defendant's use of his assets. *See CSC Holdings, Inc. v. New Info. Techs., Inc.,* 2001 WL 276941 (N.D.Tex. Mar.14, 2001) (granting prejudgment restraint on defendant's assets where plaintiff prayed for permanent injunction and accounting of defendant's profits); *CSC Holdings, Inc. v. New Info. Techs., Inc.,* 148 F.Supp.2d 755 (N.D.Tex.2001) (plaintiff also prayed for damages in addition to equitable relief); *Wishnatzki v. H.P. Island–Wide,* 2000 WL 1610790 (S.D.N.Y.2000) (granting prejudgment restraint on defendant's assets where plaintiff asserted equitable interest in funds as beneficiaries of statutory trust); *F.T. Int'l, Ltd. v. Mason,* 2000 WL 1514881 (E.D.Pa. Oct.11, 2000) (plaintiff entitled to prejudgment restraint on defendant's assets based on claims of unjust enrichment and constructive trust); *Nat'l Union Fire Ins. Co. v. Kozeny,* 115

F.Supp.2d. 1231 (D.Colo.2000) (granting preliminary injunction freezing defendant's assets based on claims for equitable relief and money damages). Based on *Grupo Mexicano,* courts have also refused to enjoin the assets of a defendant where the plaintiff did not assert a cognizable claim in equity with the necessary nexus to those assets. *See Travelers Cas. & Sur. Co. of Am. v. Beck Dev. Corp.,* 95 F.Supp.2d 549, 552 (E.D.Va.2000) (court lacks the power "to issue an injunction preventing the transfer of assets in an action solely for money damages where the party seeking the injunction has no lien or equitable interest in the property"); *Traffix, Inc. v. Talk. com,* 2001 WL 123724 (S.D.N.Y. Feb.13, 2001) (denying prejudgment restraint on assets based on breach of contract claim for money damages only).

*Mexicano*, and illuminated by *Rahman*, to the present record.

## B. Whether Amalgamated Asserts Cognizable Claims in Equity

### 1. Do the Statutory Causes of Action Preclude the Equitable Claims?

Defendants argue that because Amalgamated alleges insider liability under section 10(b) and section 20A and the right to receive damages under those statutes, the claims are legal, not equitable. (Docket Entry No. 27, p. 15). Defendants specifically argue that Amalgamated's claims under sections 10(b) and 20A of the Exchange Act are claims for money damages and do not seek equitable relief.[7] Amalgamated responds that the Exchange Act expressly provides that federal courts may use equitable remedies to enforce the statutory provisions and argues that it has effectively invoked such remedies. (Docket Entry No. 7, at 8, 12).

 Congress may deprive the federal courts of their equitable authority by establishing a comprehensive enforcement scheme with exclusive remedies for a statutory violation. *United States v. Babcock*, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011 (1919) ("where a statute creates a right and provides a special remedy, that remedy is exclusive"); *see also Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 301, 64 S.Ct. 95, 88 L.Ed. 61 (1943). Congressional intent to adopt such an exclusive regime must be clear:

Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available .... More-over, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences or doubtful construction."

*Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (quoting *Brown v. Swan*, 10 U.S. (Pet.) 497, 503 (1836)); *see also Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. ·1028, 117 L.Ed.2d 208 (1992) (absent clear direction to the contrary from Congress, federal courts have the power to award any appropriate relief in a cognizable cause of action under a federal statute); *Miller v. French*, 530 U.S. 327, 336, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) ("we do not lightly assume that Congress meant to restrict the equitable powers of the federal courts").

 Amalgamated argues that sections 27 and 28(a) of the Exchange Act authorize the use of equitable remedies to enforce statutory liabilities. Section 27 states that "[t]he district courts of the United States ... shall have exclusive jurisdiction ... of all suits in equity or actions at law brought to enforce any liability or duty created by this chapter ...." 15 U.S.C. § 78aa. This section grants jurisdiction to the federal courts over suits brought in equity or law to enforce the

---

**7.** Amalgamated has also alleged violations of sections 11 and 15 of the Securities Act and section 20(a) of the Exchange Act of 1934. The claims for violations of sections 11 and 15 are unrelated to the insider trading proceeds that Amalgamated seeks to freeze. *See* 15 U.S.C. §§ 77k, 77o. Claims under these statutory sections cannot provide a basis for the temporary restraining order. Section 20(a) does relate to the allegations of insider trading, but only imposes joint and several liability on controlling persons for violations of other provisions of the Exchange Act provision and does not provide any substantive right or particular remedy. *See* 15 U.S.C. § 78t(a).

rights found "in the substantive provisions of the 1934 Act which [plaintiffs] seek to enforce." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Section 28(a) provides that "the rights and remedies provided by this chapter [15 U.S.C. § 78a *et seq.*] shall be in addition to any and all other rights and remedies that may exist at law or in equity...." 15 U.S.C. § 78bb(a).

In *Deckert*, 311 U.S. at 288, 61 S.Ct. 229, the Supreme Court interpreted the very similar jurisdictional provisions of the Securities Act. *See* 15 U.S.C. §§ 77p & 77v (codifying sections 16 and 22 of the Securities Act). The plaintiff in *Deckert* had prayed for restitution, rescission, an accounting, appointment of a receiver, and an asset-freezing injunction. *See Deckert*, 311 U.S. at 288, 61 S.Ct. 229. The Court held that

> the Securities Act does not restrict [those] seeking relief under its provisions to a money judgment. On the contrary, the Act as a whole indicates an intention to establish a statutory right which the litigant may enforce in designated courts by such legal or equitable actions or procedures as would normally be available to him.... If petitioners' bill states a cause of action when tested by the customary rules governing suits of such character, the Securities Act authorizes maintenance of such suit ....

*Id.* Defendants acknowledge that a plaintiff may invoke otherwise available general equitable powers, conferred on courts by the Judiciary Act of 1789, in a case under the securities statutes. (Docket Entry No. 83, at 12 (citing *Deckert*, 311 U.S. at 287–88, 61 S.Ct. 229)).

A number of cases assume or affirm that generally available equitable remedies may be used in actions under the Exchange Act. In the first case to recognize a private right of action under section 10(b) of the Exchange Act, the court awarded an equitable accounting for profits to shareholders suing the officers and directors for insider trading. *Kardon v. Nat'l Gypsum Co.*, 73 F.Supp. 798 (E.D.Pa.1947); *see also Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y.1972) (approving settlement of a class action seeking an accounting for profits brought under section 10(b) of the Exchange Act). The Supreme Court has acknowledged the availability of equitable remedies to enforce provisions of the Exchange Act. In *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court considered a case brought under section 14(a) of the Exchange Act and, without analysis, stated, "[i]n selecting a remedy the lower courts should exercise the sound discretion which guides the determinations of courts of equity." *Id.* at 386, 90 S.Ct. 616 (internal quotations and citations omitted); *see also J.I. Case Co. v. Borak*, 377 U.S. 426, 433–34, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). A number of decision involve the use of equitable powers to provide relief to private investors claiming violations of the Exchange Act. *See, e.g., Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1118 (5th Cir.1980) (section 28(a) provides that "the rights and remedies created by the Exchange Act did not displace, but were in addition to, all other rights and remedies that might exist at law or in equity"); *Hooper v. Mountain States Sec.*, 282 F.2d 195, 206 (5th Cir.1960) (suit brought under 10(b) seeking money damages and accounting; propriety of relief not questioned); *Christophides v. Porco*, 289 F.Supp. 403 (S.D.N.Y.1968) (court does not question shareholders' request for injunction, accounting for profits, and money damages under section 10(b) of Exchange Act).

Disgorgement of defendants' insider trading proceeds is among the remedies Amalgamated seeks. Section 20A, the express right of action for insider trading,

incorporates disgorgement of the defendant's profits. Congress added section 20A to the Exchange Act as part of the Insider Trading and Securities Fraud Enforcement Act of 1988. *See* P.L. No. 100–704 § 5, 102 Stat. 4677 (1988). That section states:

> The total amount of damages imposed under subsection (a) of this section shall not exceed the profits gained or loss avoided in the transaction or transactions that are the subject of the violation.

15 U.S.C. § 78t–1(b).

Defendants argue that because section 20A specifically provides for disgorgement of insider trading proceeds, it is a statutory measure of damages, rather than an equitable remedy. The statute authorizes recovery by investors who have bought or sold on the open market, in ignorance of the insider's trades and of the inside information behind the trades, but limits the plaintiff's recovery to the amount of the defendant-insider's gains. The statute calculates damages not to exceed a restitutionary measure. However, the statutory authorization for equitable remedies, even when those remedies are in the form of a monetary award, does not strip them of their equitable character. *See Rahman,* 198 F.3d at 498 (citing Dan L. Dobbs, 1 Law of Remedies § 2.6(3) (2d ed. 1993) ("Dobbs on Remedies")). The fact that the statute provides for a damage measure does not preclude an equitable award of restitution using a different measure of relief. *Porter v. Warner Holding Co.,* 328 U.S. 395, 401–03, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). Amalgamated has pleaded not only for statutory damages, which under section 20A are calculated by a restitu-

tionary measure, but also for the equitable restitutionary remedies of a constructive trust and an equitable accounting for profits.[8] *See generally* Dobbs on Remedies §§ 4.2–4.3 (discussing the historical differences between restitution at law and restitution in equity).

Defendants also argue that only the SEC may seek an injunction requiring disgorgement under section 20A. The case law and commentary on section 20A consistently observe that it provides for the disgorgement of the defendant's profits to a private plaintiff, and that this amount will be "diminished" by any amount disgorged in an SEC enforcement action. The House Report accompanying the bill signed into law indicates that Congress intended to provide private plaintiffs with the express remedy of disgorgement of the benefits obtained by insider defendants trading securities in violation of section 20A. *See* H.R.Rep. No. 100–910, *available in* 1988 U.S.C.C.A.N. 6043; *see also* Thomas L. Hazen, The Law of Securities Regulation § 12.12 (4th ed.2002) (section 20A provides for disgorgement of profits as remedy in private action); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 734 F.Supp. 1071, 1076 (S.D.N.Y.1990) (ordering disgorgement of insider trading profits, less amount disgorged to SEC, in addition to fees and commissions received). A number of cases also affirm the enforcement of section 10(b) liability through disgorgement of defendant's insider trading profits to private plaintiffs, a remedy different from obtaining damages measured by plaintiff's out-of-pocket losses. *See, e.g., Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156 (2d Cir.1980); *Pidcock v. Sunnyland America, Inc.,* 854 F.2d 443 (11th

---

**8.** Although a constructive trust and accounting for profits would both yield an award of money in the circumstances of this case, these remedies are distinct from an award of money damages. A constructive trust and an ac-

counting for profits invoke the *in personam* power of the old equity courts and result in a coercive order to make the required transfer of funds or property. Dobbs on Remedies §§ 1.4, 4.3(2), 4.3(5).

Cir.1988); *Fin. Indus. Fund, Inc. v. McDonnell Douglas Corp.*, 474 F.2d 514 (10th Cir.1973); *Ohio Drill & Tool Co. v. Johnson*, 498 F.2d 186 (6th Cir.1974); *Janigan v. Taylor*, 344 F.2d 781, 783 (1st Cir.1965).

 Defendants argue that Amalgamated's claim for money damages is the principal object of this class action suit and that the claims for ultimate equitable relief are inserted solely to provide a footing for a prejudgment injunction freezing assets. (Docket Entry No. 83, at 15–17, & No. 43). The argument is similar to that presented in *Rahman.* In that case, as here,

> the defendants argue that this is "overwhelmingly a suit at law for money damages under the [Exchange Act], rather than an equitable action like *Deckert.*" They maintain that the [plaintiff's] claims to equitable relief are "ancillary and incidental," whereas in *Deckert,* the "principal objects" of the suit were equitable relief. The defendants observe that if we were to apply the holding in *Deckert* to this case, any artful pleader could circumvent *Grupo Mexicano* "merely by 'sprinkling' a bit of equity on a suit at law for money damages."

198 F.3d at 494–95. In *Rahman,* the court held that the fact that substantial "money damages are claimed along with equitable relief does not defeat the district court's equitable powers." *Id.* at 499. Courts can prevent "artful" efforts to avoid the limits of *Grupo Mexicano* by assuring that plaintiffs seeking asset-freezing injunctions meet the "substantive requirements for obtaining relief," including the fact that "a remedy in equity remains justified only when otherwise authorized." *Id.* at 499.

The *Rahman* court noted that a number of cases decided before *Grupo Mexicano* had sustained preliminary injunctions where both legal and equitable remedies were sought. *Id.* at n. 2. Defendants have not cited a case decided since *Grupo Mexi-*

*cano* in which a court denied a preliminary injunction restricting a defendant's assets on the ground that plaintiff sought both a cognizable equitable remedy and substantial money damages. The fact that Amalgamated seeks substantial money damages as well as invoking equitable remedies does not in itself bar the issuance of preliminary equitable relief. The cases confirm that when a plaintiff asserts a cognizable claim in equity, even if in conjunction with a claim for money damages, a court has the power to issue a preliminary injunction freezing defendant's assets if the applicant satisfies the requirements for such relief.

Defendants also argue that cases decided prior to *Grupo Mexicano,* but consistent with it, indicate that the temporary restraining order at issue here is beyond the power of this court. Defendants cite *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520 (11th Cir.1994), in which the Eleventh Circuit reversed a preliminary injunction freezing the defendants' assets pending trial in a securities fraud suit. The plaintiff shareholders sued Cascade, two officers who were also board members, an outside director, and the outside auditor, alleging violations of sections 10(b) and 20(a) of the Exchange Act, as well as negligent misrepresentation and fraud under state common law. *Id.* at 1525. As a remedy, plaintiffs requested money damages, costs and attorney fees, and "such other and further relief" as the court "deems just and proper." *Id.* Based on its reading of *De Beers,* the district court granted a temporary restraining order and preliminary injunction freezing the outside director's assets. The Eleventh Circuit, also relying on *De Beers,* reversed the decision because "a district court lacks the authority to issue a preliminary injunction freezing the assets of a defendant in a case seeking only money damages." *Id.* at 1531. In that case, the plaintiffs did not

seek equitable remedies "as an alternative remedy for any of the stated causes of action." *Id.* The court also noted that although plaintiffs later amended their complaint to add violations of section 16 of the Exchange Act, prohibiting insiders from realizing "short swing" profits in the company's securities, those allegations were not pending when the district court issued the injunction. When the injunction issued, plaintiffs were only seeking money damages for claims that did not include insider trading while in possession of material nonpublic information. *Rosen* does not preclude the relief Amalgamated seeks. *Accord In re Fredeman Litig.*, 843 F.2d 821 (5th Cir.1988) (preliminary injunction freezing assets of defendant inappropriate absent underlying cognizable equitable claim).

Neither the statutory causes of action Amalgamated pleads, nor the fact that it seeks substantial monetary damages, preclude this court from considering the application for a temporary restraining order. To determine whether such an order is authorized in this case, this court analyzes whether Amalgamated's equitable claims are cognizable and have a sufficient nexus to the defendants' assets at issue.

### 2. Are Amalgamated's Equitable Claims Cognizable?

█ Amalgamated, as a shareholder of Enron, has asserted claims for restitution, constructive trust, an equitable accounting, and disgorgement of profits gained from defendants' alleged abuses of their fiduciary positions as officers and directors of Enron, in violation of sections 10(b) and 20A of the Exchange Act. Deciding whether a plaintiff has properly stated a claim for equitable relief requires an examination, in accordance with *Grupo Mexicano,* of the equitable claims historically available.

Some of the earliest writings on the equity jurisdiction of English courts emphasize the exclusive role of the equity courts over suits arising out of a breach of a fiduciary duty. "Three things are to be judged in a court of conscience; covin, accident and breach of confidence." SIR EDWARD COKE, 4 INSTITUTES OF THE LAWS OF ENGLAND 84 (1669). Sir William Blackstone notes in his *Commentaries on the Laws of England,* published in 1768, that

> "A technical trust indeed, created by the limitation of a second use, was forced into a court of equity ... and this species of trusts, extended by inference and construction, have ever since remained as a kind of *peculium* in those courts."

WILLIAM BLACKSTONE, 3 COMMENTARIES ON THE LAWS OF ENGLAND 431 (1768) (emphasis removed and spelling modernized); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("It is true that, at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust") (citing *Lessee of Smith v. McCann*, 65 U.S.(24 How.) 398, 407, 16 L.Ed. 714 (1860)).

█ Restitutionary remedies in equity provided by the chancery courts of England included constructive trust and accounting for profits as mechanisms to accomplish disgorgement or restoration to rectify unjust enrichment. *See* RESTATEMENT OF RESTITUTION pt. 1, at 5–10 introductory note (1937) (tracing the roots of restitution in equity); DOBBS ON REMEDIES § 4.3(1); JOSEPH STORY, EQUITY JURISPRUDENCE §§ 618–625 (on equitable accounting) & 1662–1712 (on constructive trusts) (1884) ("STORY ON EQUITY"); Douglas Laycock, *The Scope and Significance of Restitution,* 67 TEX. L. REV. 1277, 1278 (1989) (discussing the central principle of restitution "that unjust enrichment must be disgorged"). A constructive trust and an ac-

counting for profits imposed for breach of fiduciary duty are equitable remedies of restitution. *See* STORY ON EQUITY §§ 1663, 1669 (constructive trust allowed where a "trustee or other person standing in a fiduciary relation makes a profit out of any transactions within the scope of his agency or authority") and § 623 ("directors of private companies, and other persons standing in a similar situation are not ... allowed to make any profit out of their offices" and equitable accounting is a remedy to recover such profits). These profits can then be traced into other forms of real or personal property. *Id.* at § 1666.

Defendants challenge Amalgamated's ability to assert valid claims for a constructive trust. The elements of this remedy and that of equitable accounting are explored below.

### a. *Constructive Trust*

 The equitable remedy of the constructive trust was developed in the chancery courts of England in cases analogous to those involving express trusts, but where either there was no such trust or it was unenforceable. *See* GEORGE E. PALMER, 1 LAW OF RESTITUTION 9–16 (1978) ("PALMER ON RESTITUTION"). A constructive trust has long been used as a remedy for unjust enrichment obtained from a fiduciary's breach of duty. The elements of such a constructive trust are: a fiduciary relationship existing between the plaintiff and defendant; which the defendant breached; and, as a result, earned a profit that justice does not permit him to keep. *See Keech v. Sandford,* 25 Eng. Rep. 223 (Ch. 1726). "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.). To obtain a constructive trust, the plaintiff must be able to identify a specific asset or fund of money as belonging "in good conscience to the plaintiff." *See* DOBBS ON REMEDIES § 4.3(2) (discussing history of the constructive trust and citing RESTATEMENT OF RESTITUTION § 160, comments i & j (1937)).

Defendants argue that Amalgamated has not stated a cognizable equitable claim for a constructive trust because it cannot show that defendants wrongfully obtained property belonging to Amalgamated or any other member of the putative class. Defendants also argue that Amalgamated cannot show that defendants profited at the expense of any of the plaintiffs, given the open market in which the trades occurred. In support of these arguments, defendants cite to recent cases on constructive trusts and the year 2000 Discussion Draft of the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT.[9] Amalgamated responds that the allegations of breach of fiduciary duty remove such requirements.

 Amalgamated alleges that by trading while in possession of materially adverse nonpublic information, the defendant officers and directors breached the fiduciary duties they owed to persons trading Enron's shares at the time the defendants traded their Enron stock. Amal-

---

**9.** The discussion draft cited by defendants remains, at this stage, an incomplete draft. Only the first two chapters have been drafted by the reporter and none has been approved by the American Law Institute. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICH- MENT, Reporter's Introductory Memorandum (Discussion Draft Mar. 31, 2000). Notably, the sections on the remedies available, analogous to the sections from the first Restatement, cited below, have not yet been drafted. *See id.*

gamated argues that the proceeds—or the profits—are an identifiable fund on which a constructive trust should be imposed.

The relationship between a corporation's officers and directors and the stockholders of that corporation has long been held to be fiduciary in nature.[10] Justification for the fiduciary obligation of corporate officers and directors relies on trust law. Shareholders entrust assets to directors and officers for them to manage for their benefit. Directors and officers owe a fiduciary obligation to shareholders because property has been entrusted to the corporate fiduciaries to be managed for the shareholders' benefit.[11]

In one of the first English cases dealing with a fiduciary who profited from information gained from the fiduciary relationship, the chancellor imposed a constructive trust and ordered an equitable accounting to the plaintiff. In *Keech v. Sandford*, 25 Eng. Rep. 223 (Ch. 1726), the defendant was trustee for a trust benefitting a minor plaintiff. The trust property included a lease, which the lessor refused to renew with the trust. The defendant, who learned that the lease was available in the course of his duties as trustee, entered into a new lease with the lessor for his own benefit. The chancellor ordered the defendant to convey the lease to the plaintiff and to account for any profits made from the lease. The chancellor granted a constructive trust on the lease and the profits the fiduciary obtained in performing his duties, despite the fact that the plaintiff had suffered no loss from the trustee's actions. 25 Eng. Rep. at 227. *Keech* continues to be cited by the Chancery Courts of England for the principle that profits wrongfully earned by a fiduciary based on information gained in performing his duties can be held in a constructive trust for the beneficiary of the fiduciary duty. *See CMS Dolphin Ltd. v. Simonet*, 2001 WL 535670 (Ch.D. May 23, 2001) ("the underlying principles that a fiduciary must not place himself in a position where his duty and his interest may conflict, and that a fiduciary may not retain a profit which he makes from the use of property subject to the fiduciary relationship or which he makes by reason of his fiduciary position, go back to the eighteenth century: *Keech v. Sandford* (1726) Sel Cas. t. King 61.");

---

**10.** *See Dirks v. SEC*, 463 U.S. 646, 672, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) ("The insider's duty is owed directly to the corporation's shareholders"); *Federal Deposit Ins. Corp. v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir.1982) ("Directors hold a place of trust and by accepting the trust are obliged to execute it with fidelity, not for their own benefit, but for the common benefit of the stockholders of the corporation.") (citing *Koehler v. Black River Falls Iron Co.*, 67 U.S. (2 Black) 715, 720, 17 L.Ed. 339 (1862)); *see also Ashman v. Miller*, 101 F.2d 85, 90–91 (6th Cir.1939) (noting director of corporation maintains fiduciary relationship to it and its stockholders in that his/her position is one of trust, frequently denominated trustee and thereby held accountable in equity); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del.1939) (asserting that, while technically not trustees, corporate officers and directors stand in fiduciary relation to corporation and its stockholders).

**11.** *See* Victor Brudney, *Fiduciary Ideology in Transactions Affecting Corporate Control*, 65 Mich. L. Rev. 259, 260 (1966):

> [T]he fiduciary responsibility of an officer or director attaches as a concomitant of his selection by the stockholders to represent them in managing their investment. Because the power over their investment thus delegated to him is representational, the duties he owes and the restrictions to which he is subject in his dealings with respect to their "property" are rooted in the law of agency and the law of trusts, which govern comparable representational relationships.

*Id.* at 260; *see also* A.A. Berle, Jr., *For Whom Corporate Managers Are Trustees: A Note*, 45 Harv. L. Rev. 1365, 1365 (1932) ("Historically, and as a matter of law, corporate management have been required to run their affairs in the interests of their security holders.").

*United Pan–Europe Communications N.V. v. Deutsche–Bank AG,* 2000 WL 699349 (CA May 19, 2000) (same).

The first RESTATEMENT OF RESTITUTION, published in 1937, embodies this principle. Section 160 states that "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." RESTATEMENT OF RESTITUTION § 160 (1937). Comment d. to section 160 explains that the unjust enrichment to the defendant need not involve a loss to the plaintiff: "[I]f a defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff, although the profit was not made at the expense of the plaintiff." *Accord* DOBBS ON REMEDIES § 10.4–10.5. The RESTATEMENT also provides that "[w]here a fiduciary in violation of his duty to the beneficiary acquires property through the use of confidential information, he holds the property so acquired upon a constructive trust for the beneficiary." *Id.* at § 200; *accord* PALMER ON RESTITUTION § 2.11 (same).

Defendants assert that Amalgamated must demonstrate that its own property is in the hands of the defendants in order to assert an equitable claim. (Docket Entry No. 83, at 8–9). Defendants argue this is an impossible showing for proceeds from trades on an open market. (*Id.,* Ex. A). The cases and authorities do require that, in cases involving breach of fiduciary duty, the court must be able to identify a specific fund or *res* that resulted from the defendant's breach, but not necessarily from the plaintiff's hands. *See, e.g.,* RESTATEMENT OF RESTITUTION § 200; PALMER ON RESTITUTION § 2.11; *Meadows v. Bierschwale,* 516 S.W.2d 125 (Tex.1974) (imposing constructive trust where defendant acquired property due to his breach, even though plain-tiff never had a proprietary interest in the property).

To establish a right to a constructive trust, Amalgamated must identify a specific asset or fund of money, held by each defendant, consisting of profits from sales of Enron stock made while in the possession of materially adverse insider information, in breach of fiduciary duties owed to shareholders. *See* DOBBS ON REMEDIES § 4.3(2). At this stage, Amalgamated's allegation may be sufficient to state an equitable bill for a constructive trust. *See Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (upholding imposition of constructive trust on profits identified by category, but not yet earned, arising from breach of confidential relationship); *Deckert,* 311 U.S. at 289, 61 S.Ct. 229 ("It is enough at this time to determine that the bill contains allegations which, if proved, entitle petitioners to some equitable relief.").

Even if the tracing requirement does defeat a constructive trust, Amalgamated has also requested an equitable accounting of the profits defendants obtained from insider trades. (Docket Entry No. 7, at 15). A brief examination of equitable accounting reveals that is it based on more limited tracing than the constructive trust. Because the equitable accounting remedy does not require the identification of a particular fund or *res* to which a trust attaches, it avoids the problem defendants have identified with the constructive trust.

b. *Equitable Accounting for Profits*

Amalgamated has requested an equitable accounting by the defendants of their transactions of Enron stock and the transactions involving investments of those proceeds. (Docket Entry No. 7, at 14–15). Amalgamated asserts that it is entitled to such an equitable accounting based on the

allegations that the profits were earned in breach of fiduciary duties.

An equitable accounting for profits developed in the chancery courts of England as a restitutionary remedy to avoid unjust enrichment by reaching money owed by a fiduciary or other wrongdoer, including profits that should in "equity and good conscience" belong to the plaintiff. *See* DOBBS ON REMEDIES § 4.3(5) (discussing history of the equitable accounting); STORY ON EQUITY § 589–600 (providing overview of circumstances in which accounting is available and the equitable jurisdiction for an accounting between fiduciaries); *see also* Joel Eichengrun, *Remedying the Remedy of Accounting*, 60 IND. L.J. 463, 469 (1985) (tracing history of the action for an accounting in its various forms). The English Chancery Court held in *Docker v. Somes* that "[w]herever a trustee, or one standing in the relation of a trustee, violates his duty, and deals with the trust estate for his own behoof, the rule is that he shall account to the *cestui que trust* for all the gain which he has made." 39 Rev. Rep. 317 (Ch. 1834) (cited in STORY ON EQUITY § 620 n. 4 (1884)); *see also Piety v. Stace,* 4 Ves. 620 (Ch. 1799).

▇▇▇▇▇ An equitable accounting, as a restitutionary remedy, is based on unjust enrichment. *See* DOBBS ON REMEDIES § 4.3(5). As with a constructive trust, the profit sought need not have been made at the plaintiff's expense. *See* PALMER ON RESTITUTION § 2.11 (fiduciary held accountable for profits "without regard to whether or not the profit is at the expense of the principal"); *Diamond v. Oreamuno,* 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (N.Y.1969) (equitable accounting used against corporate fiduciary who used information gained in fiduciary capacity, despite lack of injury to corporation); RESTATEMENT (SECOND) OF AGENCY § 388 comment c. (1958) ("An agent ... has a duty to account for any profits made

by the use of [confidential] information, although this does not harm the principal"). A plaintiff seeking an equitable accounting rather than a constructive trust need not identify a particular asset or fund of money in the defendant's possession to which she is entitled. *See* DOBBS ON REMEDIES § 4.3(1).

▇▇▇▇▇ An accounting for profits as an equitable remedy for breach of fiduciary duties forces a defendant to disgorge gains improperly obtained by breach of fiduciary duty and imposes on the defendant the obligation of proving appropriate deductions to determine the profit. *See* DOBBS ON REMEDIES § 4.3(5); *Pallma v. Fox,* 182 F.2d 895 (2d Cir.1950) (L.Hand, C.J.). An accounting can also be used to obtain information in aid of obtaining such profits. *See, e.g., Reebok Int'l, Ltd. v. Marnatech Enter., Inc.,* 737 F.Supp. 1521 (S.D.Cal. 1989), *aff'd,* 970 F.2d 552 (9th Cir.1992). The remedy of an equitable accounting has been used in suits brought under section 10(b) of the Exchange Act. In *Kardon v. National Gypsum,* the court awarded an accounting for profits:

> The plaintiffs' case was established when the defendants' duty and its breach were proved. This was done by showing that the defendants were officers and directors of Western and that they disposed of the bulk of the corporate assets to an outsider, for their own benefit .... The remedy follows, which, in this case, is an accounting to ascertain and restore to the plaintiffs their proportionate share of the profits, if any.

73 F.Supp. 798, 802 (E.D.Pa.1947); *accord Diamond,* 24 N.Y.2d at 498–99, 301 N.Y.S.2d 78, 248 N.E.2d 910.

▇▇▇▇ Despite the difficulties inherent in its constructive trust allegations, Amalgamated has asserted a cognizable claim to an equitable accounting for profits defendants earned by trading Enron securities

during the Class Period. A nexus between the cognizable claims in the suit and the assets of defendants has been alleged. "'It is enough at this time to determine that the bill contains allegations which, if proved, entitle petitioner to some equitable relief.'" *Rahman*, 198 F.3d at 498 (quoting *Deckert*, 311 U.S. at 289, 61 S.Ct. 229).

The next issue is whether the record supports the relief Amalgamated seeks.

### III. The Temporary Restraining Order

 A temporary restraining order or preliminary injunction is an extraordinary equitable remedy that may be granted only if plaintiff establishes the following four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied, (3) that the threatened injury outweighs any damage that the injunction might cause defendants, and (4) that the injunction will not disserve the public interest. *See Sugar Busters, LLC. v. Brennan*, 177 F.3d 258, 265 (5th Cir.1999).

 Amalgamated seeks a temporary restraining order freezing a portion of defendants' assets—the proceeds, or, more precisely, the profits, from sales of Enron stock in the Class Period—to prevent the dissipation or concealment of those profits and preserve them to satisfy any future equitable award entered by this court. In the cases in which such a prejudgment asset-freezing injunction is granted, the courts have been presented with allegations and evidence showing that the defendants were concealing assets, were transferring them so as to place them out of the reach of postjudgment collection, or were dissipating the assets. *See, e.g., Rahman*, 198 F.3d at 493 (uncontradicted allegations that defendants had transferred assets to Caribbean Island and were selling main assets of the corporation); *Deckert*, 311 U.S. at 291, 61 S.Ct. 229 (defendant insol-

vent and giving preference to foreign creditors seeking payment); *Republic of Panama v. Air Panama Internacional, S.A.*, 745 F.Supp. 669 (S.D.Fla.1988) (defendants attempting to transfer assets of national airline to illegitimate government of Panama, putting the assets outside the reach of the court); *Republic of the Philippines v. Marcos*, 862 F.2d 1355 (9th Cir.1988) (upholding asset freeze based on allegations that defendants had internationally transferred personal assets and had used false identities to transfer assets to a Liechtenstein trust, using Swiss banks, for their benefit). This court must carefully examine whether Amalgamated has presented sufficient evidence of such a threat. To obtain the temporary restraining order requested, Amalgamated must demonstrate there exists a substantial threat of irreparable injury if the order is not granted. *Sugar Busters*, 177 F.3d at 265. Amalgamated must show that each defendant is likely to dissipate the assets that may satisfy the equitable remedies Amalgamated has asserted, absent intervention by this court.

Amalgamated argues that defendants' assets are the "only viable avenue of recovery for Amalgamated's §§ 10(b) and 20A claims and equitable claims under § 11" due to Enron's bankruptcy. (Docket Entry No. 7, at 25). This argument does not show a substantial threat that the proceeds or profits of the individual defendants' Enron trades will be unavailable to satisfy Amalgamated's equitable claims if this temporary restraining order is not granted. This argument does not provide a basis for concluding that each or any defendant is attempting to dissipate or conceal the profits gained from trading Enron stock in the Class Period, so as make them uncollectible in the event of an award of the equitable relief Amalgamated seeks. A prejudgment asset freeze is not available in a case simply because the po-

tential equitable award is likely to exceed available assets.

Amalgamated has provided an affidavit in support of its motion from Marc I. Steinberg, a professor of securities law and former SEC enforcement attorney. Steinberg states that there is a "significant risk that Individual Defendants' reported and unreported insider trading proceeds may be dissipated or diminished." (Docket Entry No. 9, ¶ 14). He bases this testimony on his experience as an attorney with the SEC, where he learned that the SEC "with some frequency, recovers diminished proceeds in its enforcement actions seeking disgorgement." *Id.* He also notes that some of the defendants "have evidenced their sophistication in managing offshore limited partnerships that obscured the true nature of certain financial transactions."

This affidavit does not distinguish among the defendants on the basis of their involvement in the alleged securities violations, their trades, or their present or future risk of asset concealment or dissipation. Nor do the pleadings and submissions distinguish among the individual defendants on the basis of their current activities or present or future risk of asset concealment or dissipation. A careful review of the record does not disclose the necessary showing that the individual defendants will remove the assets from the reach of the plaintiffs, so as to cause irreparable injury absent an asset freeze.

 Andrew S. Fastow is the only defendant against whom Amalgamated made a specific suggestion of a risk of concealment of assets. Fastow served as chief financial officer of Enron from 1998 until October 2001. Fastow was also the managing member of the general partners of LJM1 and LJM2, two of the Enron related entities around which much of the present controversy has swirled. (Docket Entry No. 8, Ex. 13, Enron Corp. 8–K of Nov. 8, 2001). According to Enron's recent filing with the SEC, LJM1 and LJM2 are private investment limited partnerships formed in 1999 and organized under the laws of the Cayman Islands. (Docket Entry No. 8, Ex. 13, at 3). Amalgamated alleges that Fastow's involvement with these offshore entities shows that Fastow knows how to conduct international financial transactions. So do many individuals and entities; that alone is not a sufficient basis for the relief sought.

At the December 7, 2001 hearing, counsel for Amalgamated asserted that he had reason to believe that defendant Skilling had recently been to Brazil and that defendant Fastow was then in Israel. Counsel for Skilling and Fastow denied these statements. Counsel for Amalgamated concedes that both individuals have apparently returned to this country. Counsel for Amalgamated also points to the SEC's difficulty in securing Fastow's appearance as a witness. However, Fastow is now scheduled to appear. This record does not show a substantial risk that Skilling or Fastow will conceal the assets in question.

Amalgamated argues that because the "public interest" is involved in this case, requirements for issuing an asset-freezing order should be relaxed. This argument raises the question noted earlier. In *Rahman,* the court relied on the fact that the government was the plaintiff in explaining the willingness to affirm the preliminary injunction. The government is not involved in this suit. The government is involved, charged with representing the public interest, in ongoing administrative and congressional investigations involving Enron, its management, and Arthur Andersen.

Even in *Rahman,* in which the court emphasized the impact on its equitable powers resulting from the government's presence in the suit, the court also empha-

sized that the requirements for obtaining the equitable relief nonetheless had to be met. 198 F.3d at 499. This court must require satisfaction of the requirements for the relief sought. Those requirements are not met on the present record.

## IV. Expedited Discovery

■ Under the Private Securities Litigation Reform Act (PSLRA):

all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4 (Supp.2001). Amalgamated attempts to argue that this provision means that discovery is not stayed until the defendants have filed a motion to dismiss, and not before. However, this provision has been interpreted to mean that discovery is stayed from the filing of the complaint *until* the court has determined the sufficiency of the plaintiff's pleading, unless the plaintiff can establish one of the exceptions. See S. Rep. 104–98, at 14 (1995), *reprinted in* 1995 U.S.S.C.A.N. 679, 693 (discovery should "be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint"); *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F.Supp.2d 676, 681 (D.Md. 2000) ("Until the opportunity to test the sufficiency of the complaint has passed, the congressional intent is clear—no discovery should commence."). Amalgamated argues that its request fits within one of the exceptions.

With respect to defendant Arthur Andersen, this court concludes that there is presently no basis for the discovery sought under section 21D(b)(3) of the Private Securities Law Reform Act (15 U.S.C. § 78u–4(b)(3)(B)). Counsel for Amalgamated has requested the opportunity to brief whether, and to what extent, it is entitled to such discovery as to the individual defendants, particularly as to the officers allegedly liable as control persons, Kenneth Lay, Jeffrey Skilling, and Andrew Fastow. This court orders Amalgamated to file such a brief, explaining what discovery is requested and why the request should be granted, no later than January 23, 2002. Defendants may file a response no later than February 6, 2002.

## V. Conclusion

This court finds that because Amalgamated has asserted cognizable claims to equitable relief, this court may consider a prejudgment restraint on the assets defendants obtained by trading Enron stock. However, the court denies the application for a temporary restraining order on the present record.

The court ORDERS Amalgamated to file a brief on its motion for expedited discovery by January 23, 2002. Defendants must file any response by February 6, 2002.